BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE SHORT SQUEEZE ANTITRUST LITIGATION | MDL Docket No. ____ |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. SECTION 1407**

Pursuant to 28 U.S.C. section 1407 and Rule of Procedure 6.2(e) of the Judicial Panel on Multidistrict Litigation, Plaintiffs Shane Cheng and Terell Sterling, whose action is pending in the United States District Court for the Northern District of California (*Cheng et al. v. Ally Financial Inc. et al.,* Case No. 3:21-cv-00781) (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of their Motion for Transfer of the Short Squeeze Actions to the Northern District of California ("Motion to Transfer").

## BACKGROUND

Plaintiffs allege that Defendants[1] orchestrated a common scheme and conspiracy to fix, suppress, maintain or stabilize the prices for certain securities, namely, GameStop Corp. (GME), AMC Entertainment Holdings Inc. (AMC), American Airlines Group Inc. (AAL), Bed Bath & Beyond Inc. (BBBY), BlackBerry Ltd. (BB), Express, Inc. (EXPR), Koss Corporation (KOSS), Naked Brand Group Ltd. (NAKD), Nokia Corp. (NOK), Sundial Growers Inc. (SNDL), Tootsie

---

[1] Ally Financial Inc.; Alpaca Securities LLC; Cash App Investing LLC; Square Inc.; Dough LLC; Morgan Stanley Smith Barney LLC; E*Trade Securities LLC; E*Trade Financial Corporation; E*Trade Financial Holdings, LLC; eToro USA Securities, Inc.; Freetrade, Ltd.; Interactive Brokers LLC; M1 Finance, LLC; Open To The Public Investing, Inc.; Robinhood Financial, LLC; Robinhood Markets, Inc.; Robinhood Securities, LLC; Ig Group Holdings PLC; Tastyworks, Inc.; TD Ameritrade, Inc.; The Charles Schwab Corporation; Charles Schwab & Co. Inc.; FF Trade Republic Growth, LLC; Trading 212 Ltd.; Trading 212 UK Ltd.; Webull Financial LLC; Fumi Holdings, Inc.; Stash Financial, Inc.; Barclays Bank PLC; Citadel Enterprise Americas, LLC; Citadel Securities LLC; Melvin Capital Management LP; Sequoia Capital Operations LLC; Apex Clearing Corporation; and The Depository Trust & Clearing Corporation, (together, the "Defendants").

1

Roll Industries, Inc. (TR), or Trivago N.V. (TRVG) (together, the "Relevant Securities") sold to purchasers in the United States. Defendants did so to artificially restrain the trading of these securities in furtherance of the conspiracy.

The *Cheng* action, filed on February 1, 2021, was one of the first antitrust cases to be filed and is advancing in due course. This action was filed in the Northern District of California because it is the Judicial District home to the largest number of U.S.-headquartered Defendants. Plaintiffs have accomplished service on several U.S.-based Defendants and expect to perfect service soon.

To date, at least 42 cases have been filed involving similar legal claims related to the restriction in trading of the Relevant Securities have been filed throughout the nation (attached as "Exhibit B," together, the "Short Squeeze Actions"). Of the 42, 14 cases, a clear plurality, have been filed in California and 10 of the 14 have been filed in the Northern District of California.[2]

- *Cezana v. Robinhood Financial LLC et al.,* Case No. 5:21-cv-00759;
- *Cheng et al. v. Ally Financial Inc. et al.,* Case No. 3:21-cv-00781;
- *Curiel-Ruth v. Robinhood Securities LLC et al,* Case No. 3:21-cv-00829;
- *Dalton v. Robinhood Securities, LLC et al,* Case No. 4:21-cv-00697; 3:21-cv-00697
- *Days v. Robinhood Markets, Inc. et al,* Case No. 3:21-cv-00696; 4:21-cv-00696
- *Feeney et al v. Robinhood Financial, LLC et al,* Case No. 5:21-cv-00833
- *Gossett et al v. Robinhood Financial, LLC et al,* Case No. 2:21-cv-00837
- *Kayali et al v. Robinhood Financial, LLC et al,* Case No. 2:21-cv-00835
- *Krasowski et al v. Robinhood Financial LLC et al,* Case No. 3:21-cv-00758
- *Krumenacker v. Robinhood Financial, LLC et al,* Case No. 3:21-cv-00838; 4:21-cv-00838

---

[2] Cases have been filed in the following district courts: C.D. Cal. (3); D. Co. (1); D. Conn. (2); E. D. Pa. (1); E. D. Va. (1); M.D. Fla. (4); D.N.J. (3); N.D. Fla. (1); N. Ill. (5); S.D. Cal. (1); S.D. Fla. (4); S.D.N.Y. (2); S.D. Tex. (2); W.D. Pa. (1). There was also a case filed in the Northern District of Texas that has since been subsequently dismissed. *Simpson v. Robinhood Financial*, No. 21-cv-00207-B (N.D. Tex. Feb. 3, 2021), ECF No. 5.

- *Levi Cobos v. Robinhood Financial LLC et al*, Case No. 2:21-cv-00843
- *Moody et al v. Robinhood Financial, LLC et al*, Case No. 3:21-cv-00861
- *Nordeen et al v. Robinhood Financial LLC et al*, Case No. 3:21-cv-00167
- *Wieg v. Robinhood Financial LLC et al*, Case No. 5:21-cv-00693

The Short Squeeze Actions each involve claims against all or nearly all of the Defendants and challenge essentially the same unlawful conduct related to the restriction of trading in the Relevant Securities occurring on or around January 28, 2021. They each assert the similar causes of action—including claims for damages under Section 1 of the Sherman Act, 15 U.S.C. § 1—and seek similar relief in the form of damages and an injunctive relief. The Short Squeeze Actions are class actions that have been brought on behalf of a proposed class of persons that directly purchased the Relevant Securities from Defendants. Each case raises common questions of fact regarding the nature, scope and extent of Defendants' unlawful conduct, the scope and extent of Defendants' unlawful agreement and other anticompetitive conduct in violation of federal antitrust law and regulations, state law and the common law; and each case seeks damages in the form of money damages resulting from Defendants' unlawful conduct. Each case also seeks trial by jury.

The Short Squeeze Actions are in their early stages. No responsive pleadings or dispositive motions have been filed by any of the Defendants, nor has any discovery been conducted. Centralization of the Short Squeeze Actions at this early stage will allow the transferee court to efficiently resolve the common factual and legal issues, and to address overlapping discovery related to these issues.

Centralization is particularly important given the complex nature of the case. As in numerous other complex class actions and antitrust class actions in particular, pretrial motion practice and discovery therefore undoubtedly will involve overlapping issues. Likewise, because the Short Squeeze Actions assert claims on behalf of overlapping proposed classes, common questions of fact and law will be resolved in the context of adjudicating motions for class

3

certification. Based on past experience, there are a myriad of common issues that will require determination by the Court. Consequently, there are numerous reasons why these actions should be centralized in one forum, such as the Northern District of California, and under the careful management and administration of a single District Judge.

## ARGUMENT

I. **THE PANEL SHOULD CENTRALIZE THE SHORT SQUEEZE ACTIONS PURSUANT TO 28 U.S.C. SECTION 1407**

    a. **Transfer and consolidation are appropriate because the Short Squeeze Actions involve one or more common questions of fact and law.**

Considering the substantial legal and factual overlap among the Related Actions, transfer to and consolidation in a single jurisdiction will ensure efficient pretrial proceedings. 28 U.S.C. § 1407(a) provides that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." "Antitrust actions present a category of actions that the Panel almost inevitably orders transferred if there are multiple actions pending in different districts." MULTIDISTRICT LITIGATION MANUAL, § 5:14 (West 2014) (listing cases at n. 6). The Panel has routinely ordered centralization of antitrust actions in the Northern District of California alleging global cartels involving complex conspiracies in which pricing and outputs for commoditized products have been restrained. *See, e.g., In re: Xyrem (Sodium Oxybate) Antitrust Litig.*, MDL No. 2966, Case No. 5:20-md-02966 (J.P.M.L. Dec 16, 2020); *In re Capacitors Antitrust Litig. (No. III),* 285 F. Supp. 3d 1353 (J.P.M.L. 2017); *In re Lithium Ion Batteries Antitrust Litig.,* 923 F. Supp. 2d 1370 (J.P.M.L. 2013); *In re Optical Disk Drive Prods. Antitrust Litig.,* 701 F. Supp. 2d 1382 (J.P.M.L. 2010); *In re Cathode Ray Tube (CRT) Antitrust Litig.,* 536 F. Supp. 2d 1364 (J.P.M.L. 2008); *In re Graphics Processing Units Antitrust Litig.,* 483 F. Supp. 2d 1356 (J.P.M.L. 2007); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 228 F. Supp. 2d 1379 (J.P.M.L. 2002). Furthermore, "[t]he Panel has regularly ordered transfer of class

actions involving potentially overlapping or conflicting class definitions." MULTIDISTRICT LITIGATION MANUAL, at § 5:14 (listing cases at n. 21).

The same rationale for centralization and transfer applies here. As in other previous complex conspiracy cases, the Short Squeeze Actions readily satisfy these requirements. Each case involves substantially similar parties, transactions, and events. Plaintiffs in each action seek class treatment of their claims—including antitrust claims—that are or nearly are the same, alleging that on or around January 28, 2021, Defendants engaged in a conspiracy and took action that restrained trade by prohibiting retail investors from purchasing the Relevant Securities, rendering the market for securities anticompetitive, thus resulting in artificially set prices and limited ability to trade the Relevant Securities. *See, e.g.*, *Cheng* Compl. at ¶¶ 105-181; *Cezena* Compl., ¶¶ 22-47; *Curiel-Ruth* Compl., ¶¶ 36-80; *Kayali* Compl. (C.D. Cal.), ¶¶ 19-38; *Moody* Compl., ¶¶ 19-49 *see also*, *e.g.*, *Courtney* Compl., ¶ 16-27; *Dalton* Compl., ¶¶ 19-29; *Days* Compl., ¶¶ 13-26; *Feeney* Compl., ¶¶ 40-57; *Fresa* Compl., ¶¶ 24-34; *Juncadella* Compl., ¶¶ 55-66; *Muncy* Compl., ¶¶ 13-25; *Nelson* Compl., ¶¶ 11-23; *Ng.* Compl., ¶¶ 20-39; *Scalia* Compl., ¶¶ 12-21. The Short Squeeze Actions contain the same or nearly the same allegations arising from the same conduct by all or nearly all of the same Defendants. *See, e.g.*, *Cheng* Compl. at ¶¶ 131-181; *Cezena* Compl., ¶¶ 22-47; *Curiel-Ruth*, ¶¶ 53-80; *Kayali* Compl. (C.D. Cal.), ¶¶ 19-38; *Moody* Compl., ¶¶ 19-49; *see also*, *e.g.*, *Courtney* Compl., ¶ 16-27; *Dalton* Compl., ¶¶ 19-29; *Days* Compl., ¶¶ 13-26; *Feeney* Compl., ¶¶ 29-57; *Fresa* Compl., ¶¶ 24-34; *Juncadella* Compl., ¶¶ 55-66; *Muncy* Compl., ¶¶ 13-25; *Nelson* Compl., ¶¶ 11-23; *Ng* Compl., ¶¶ 23-39; *Scalia* Compl., ¶¶ 12-21. All Short Squeeze Actions contain allegations that track the *Cheng* complaint very closely. *See Cheng* Compl. at ¶¶ 105-181; *Cezena* Compl., ¶¶ 22-47; *Curiel-Ruth* Compl., ¶¶ 53-80; *Days* Compl., 10-26; *Kayali* Compl. (C.D. Cal.), ¶¶ 19-38; *Moody* Compl., ¶¶ 19-49; *see also*, *e.g.*, *Courtney* Compl., ¶ 16-27; *Dalton* Compl., ¶¶ 19-29; *Feeney* Compl., ¶¶ 29-57; *Fresa* Compl., ¶¶ 24-34; *Juncadella* Compl., ¶¶ 55-66; *Muncy* Compl., ¶¶ 13-25; *Nelson* Compl., ¶¶ 11-23; *Ng* Compl., ¶¶ 23-39; *Scalia* Compl., ¶¶ 12-21. Accordingly, common questions of fact predominate.

### b. Transfer and consolidation for pretrial proceedings will further the convenience of parties and witnesses and promote the just and efficient conduct of this litigation.

Such transfers are appropriate when they are "for the convenience of parties and witnesses" and "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a); *see also In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 289 F. Supp. 3d 1332, 1334 (J.P.M.L. 2018). The Panel has found that the convenience requirement is met when transfer and consolidation "will eliminate duplicative discovery, the possibility of inconsistent rulings on class certification and other pretrial matters, and conserve judicial and party resources." *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 412 F. Supp. 3d 1344, 1346 (J.P.M.L. 2019); *see also* MULTIDISTRICT LITIGATION MANUAL (Fourth), §20.131 (2010) ("The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.").

Here, the convenience of the parties and witnesses favors centralization in a single district. Discovery proceedings and motion practice in the Short Squeeze Actions will be essentially identical. Plaintiffs will request the same documents and data, depose and call to testify the same witnesses, and serve the same or similar interrogatories. The motions to dismiss, class certification, and motions for summary judgment will raise the same issues. The Short Squeeze Actions also include numerous parties—many of which overlapping. This means that extensive discovery and motion practice will likely be required, and the efficiencies gained through centralized and consolidated proceedings are especially large. Unless they are transferred and consolidated in one district for pretrial purposes, discovery and pretrial proceedings will be unnecessarily duplicative.

The Short Squeeze Actions, as well as any further subsequently filed securities cartel cases undoubtedly will involve overlapping discovery over at least the following topics, identified by way of example and not limitation:

- The specific securities for which Defendants conspired to artificially set prices and restrict trading, and their justifications for doing so (*See*, *e.g.*, *Cheng* Compl. ¶¶ 115-181; *Cezena* Compl., ¶¶ 44-46; *Curiel-Ruth* Compl., ¶¶ 36-80; *Kayali* Compl. (C.D. Cal.), ¶¶ 19-38); *Moody* Compl., ¶¶ 40-42; *see also*, *e.g.*, *Courtney* Compl., ¶¶ 16-22; *Dalton* Compl., ¶ 27; *Hiscock* Compl., ¶¶ 37-48; *Feeney* Compl., ¶ 1; *Fresa* Compl., ¶ 1; *Juncadella* Compl., ¶¶ 57-61, 63-64; *Nelson* Compl., ¶¶ 14-23; *Ng* Compl., ¶¶ 24-37; *Scalia* Compl., ¶¶ 15-19);

- The temporal scope of Defendants' conspiracy, the breadth of the conspiracy involving the securities at issue in the conspiracy's agreements, and their concerted and coordinated actions in furtherance of their conspiracy (*Cheng* Compl. ¶¶ 112-181; *Cezena* Compl., ¶¶ 22-47; *Curiel-Ruth* Compl., ¶¶ 36-80; *Kayali* Compl. (C.D. Cal.), ¶¶ 19-38; *Moody* Compl., ¶¶ 19-49; *see also*, *e.g.*, *Courtney* Compl., ¶¶ 11-27 ); *Dalton* Compl., ¶¶ 22-27; *Days* Compl., 13-26; *Hiscock* Compl., ¶¶ 37-48; *Feeney* Compl., ¶¶ 40-57; *Fresa* Compl., ¶¶ 24-27; *Juncadella* Compl., ¶¶ 55-65; *Muncy* Compl., ¶¶ 19-25; *Nelson* Compl., ¶¶ 14-23; *Ng* Compl., ¶¶ 23-39; *Scalia* Compl., ¶¶ 15-21);

- The impact of Defendants' concerted and coordinated actions on the price and Retail Investors' ability to purchase the Relevant Securities (*Cheng* Compl. ¶¶ 131-181; *Cezena* Compl., ¶¶ 22-47; *Curiel-Ruth* Compl., ¶¶ 36-80; *Days* Compl., ¶¶ 10-26; *Kayali* Compl. (C.D. Cal.), ¶¶ 19-38; *Moody* Compl., ¶¶ 19-49; *see*, *e.g.*, *Courtney* Compl., ¶¶ 11-27; *Days* Compl., ¶¶ 13-26; *Feeney* Compl., ¶¶ 40-57; *Fresa* Compl., ¶¶ 30-34; *Juncadella* Compl., ¶¶ 55-65; *Muncy* Compl., ¶¶ 13-25; *Nelson* Compl., ¶¶ 14-23; *Ng* Compl., ¶¶ 23-39; *Scalia* Compl. ¶¶ 15-21); and

- Defendants' pretextual justifications to the market for suppression of price of the Relevant Securities and the trading restrictions imposed on the Relevant Securities. (*See*, *e.g.*, *Cheng* Compl. ¶¶ 158-167, 172; *Curiel-Ruth* Compl. ¶¶ 71-78; *Feeney* Compl., 56; *Muncy* Compl., ¶ 21; *see also Ng* Compl., ¶ 39) .

Centralization at this early stage will allow the parties and the presiding court to address this overlapping discovery in an organized and efficient manner, and will avoid the costly duplication of effort and expenditure of resources that would result if the cases were to proceed on separate schedules in separate courts. *See, e.g.*, *Lithium Ion Batteries Antitrust Litig.,* 923 F. Supp. 2d at 1371 (centralization would "eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary").

Many of the central questions of fact are common to all of the Short Squeeze Action plaintiffs' claims. Accordingly, coordinated proceedings would conserve judicial resources, ensure consistent results, and greatly benefit the parties, witnesses, and the judicial system. The parties and the Court will benefit from these efficiencies should the Panel transfer the Short Squeeze Actions to a single forum. The transferee judge will be able to form a single, unified pretrial program that minimizes the inconvenience and overall expense for all parties and witnesses.

## II. THE NORTHERN DISTRICT OF CALIFORNIA IS THE MOST APPROPRIATE FORUM FOR CENTRALIZING ALL SECURITIES CONSPIRACY CASES

In determining where to transfer an MDL action, the Panel generally considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." MANUAL FOR COMPLEX LITIGATION (Fourth) § 20.131 (2004). As discussed below, these factors support transfer to the Northern District of California.

### a. The Largest Number of Cases are Pending in the Northern District of California and the Short Squeeze Actions Have Progressed the Furthest in the Northern District of California.

The venue of actions pending is a "very important factor" to the Panel, and "the Panel will not normally transfer actions to a district in which no action is then pending." MULTIDISTRICT LITIGATION MANUAL (Fourth), § 6:8. The Northern District of California is the best venue for transfer and consolidation because a plurality (10 of 42) of the total cases filed are pending in this district. In comparison, there are five cases pending in the Northern District of Illinois, four cases pending in the Middle District of Florida, four cases pending in the Southern District of Florida, three cases pending in the Central District of California, three cases pending

8

in the District of New Jersey, two cases pending in the District of Connecticut, two cases pending in the Southern District of New York, and a single case each pending in other districts.

The *Cheng* Action, filed February 1, 2021, was one of the first antitrust conspiracy cases related to the trading restrictions of the Relevant Securities on or around January 28, 2021 filed in the nation. Plaintiffs have been actively managing the litigation from the beginning. Plaintiffs have perfected service with a significant number of Defendants, with many more soon expected to follow. This is significant because Plaintiffs included the largest number of defendants, including all or nearly all of the Defendants named in the other Short Squeeze Actions name piecemeal. In addition, Plaintiffs have begun engaging with Defendants' counsel to coordinate next-steps and to determine the most expeditious and efficient resolution of the litigation.

    **b. The Northern District is a Convenient Forum with Significant Ties to Short Squeeze Actions.**

For at least two reasons, the Northern District of California is the most convenient geographic location for the parties and the witnesses in all of the currently filed Short Squeeze Actions and for any other Relevant Securities-related conspiracy cases to be filed.

First, eight Defendants named in the Short Squeeze Actions—a plurality—are corporations with their principal places of business in the Northern District of California, more than any other judicial district the nation. These include Defendants at the core of the conspiracy, including but not limited to Defendants Charles Schwab Corporation; Charles Schwab & Co. Inc.; Robinhood Financial, LLC; Robinhood Markets, Inc.; Alpaca Securities LLC, Square Inc.; FF Trade Republic Growth, LLC; and Sequoia Capital Operations LLC. These Defendants would benefit from the convenience of an MDL location in San Francisco to minimize the burdens associated with travel and communication spanning multiple time zones. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d at 1381 (transferring to Northern District of California would provide "an accessible and convenient location"). Further, regarding witnesses residing outside of the Northern District of California, any "concern about the cost of transporting witnesses is unwarranted because a witness is usually

9

deposed at or near his place of residence. *See* Fed. R. Civ. P. 45(d)(2)." *In re Holiday Magic Sec. and Antitrust Litig.*, 372 F. Supp. 1167, 1168 (J.P.M.L. 1974).

Notwithstanding whether the underlying contracts are applicable to the plaintiffs' case, many Defendants have included provisions submitting to the personal jurisdiction of the state and federal courts of the state of California (*see e.g.*, Schwab Terms and Conditions, ¶ 18(2); Square Terms and Conditions ¶ 21), and selecting the laws of the State of California to be the governing law (*see*, *e.g.*, Robinhood Terms and Conditions, ¶ 37(k); Alpaca Terms and Conditions, ¶ 30(i); Schwab Terms and Conditions, ¶ 15; Square Terms and Conditions, ¶ 22).

Second, Plaintiffs are both located in the Northern District of California. Additionally, many of the plaintiffs in the Short Squeeze Actions are located in the Northern District of California, and more still within California as a whole.

It is therefore fair to presume that a significant volume of discoverable documents and a significant number of key witnesses are located in California—including Defendants' high-ranking executives. *See In re Online DVD Rental Antitrust Litig.*, 609 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009) (transferring cases to district because "two of the defendants are headquartered in that district and, accordingly, relevant documents and witnesses are likely located there"). Each of these factors is significant on its own. When taken together, these factors present a strong case for centralization and transfer of all Short Squeeze Actions to the Northern District of California. Transfer there would certainly "promote the just and efficient conduct of such actions" and ensure "the convenience of parties and witnesses." 28 U.S.C. § 1407(a).

### c. The Northern District of California Has the Capacity, Expertise and Resources to Handle this Litigation Efficiently

The Northern District of California has the desired judicial experience, capacity, and resources to manage MDL proceedings in general and complex antitrust class actions in particular. *See In re Int'l Air Transp. Surcharge Antitrust Litig.*, 460 F. Supp. 2d 1377, 1379 (J.P.M.L. 2006) (noting that the Northern District of California is "well equipped with the resources that this complex antitrust docket is likely to require"); *In re Transpac. Passenger Air*

*Transp. Antitrust Litig.*, 536 F. Supp. 2d 1366, 1367 (J.P.M.L. 2008) (transferring antitrust MDL to the Northern District of California); *In re Lithium Ion Batteries Antitrust Litig.*, MDL 2420, Case No. 4:13-md-2420 (N.D. Cal. 2012); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 1827, Case No. 3:07-md-1827 (N.D. Cal. 2007); *In re Capacitors Antitrust Litig. (No. III),* 285 F. Supp. 3d 1353 (J.P.M.L. 2017); *In re: Xyrem (Sodium Oxybate) Antitrust Litigation*, MDL No. 2966, Case No. 5:20-md-02966; *see also In re Juul Labs, Inc. Mktg., Sales Pracs., and Prods. Liab. Litig.*, 396 F. Supp. 3d 1366 (J.P.M.L. 2019) (consolidated ten actions to the Northern District of California where panel "notified of more than forty potentially-related actions").

### III.    CONCLUSION

For the reasons above, Plaintiffs Cheng and Sterling respectfully request that the Panel transfer the Short Squeeze Actions to the United States District Court for the Northern District of California for consolidated pretrial proceedings.

Dated: February 4, 2021    By:    /s/ *Joseph R. Saveri*
                                          Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Christopher K.L. Young (State Bar No. 318371)
Anupama K. Reddy (State Bar No. 324873)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:   jsaveri@saverilawfirm.com
             swilliams@saverilawfirm.com
             cyoung@saverilawfirm.com
             areddy@saverilawfirm.com

*Counsel for Individual and Representative Plaintiffs Shane Cheng and Terell Sterling*