BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: JANUARY 2021 SHORT SQUEEZE TRADING LITIGATION | MDL No. 2989 |

RESPONSE TO MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. §1407, IN OPPOSITION TO ACTION BEING TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA AND IN SUPPORT OF ACTION BEING TRANSFERRED TO THE EASTERN DISTRICT OF NEW YORK

## PRELIMINARY STATEMENT

Plaintiffs Dan Dechirico, Angel Guzman, and Joshua Palmer (collectively "Plaintiffs") respectfully submit this Response to the Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 filed by Plaintiffs Shane Cheng and Terell Sterling. While Plaintiffs agree that this action should be consolidated, Plaintiffs object to the action being transferred to the Northern District of California. Plaintiffs contend that the most convenient forum for consolidation is the Eastern District of New York before the Honorable LaShann DeArcy Hall.

Overall, forty-four (44) actions have been filed in the last month in Federal District Courts throughout the country involving all or a material part of the same subject matter and substantially the same defendants as in the instant action. Plaintiffs expect that further substantially similar actions will be filed in the Eastern District of New York and other Federal District Courts throughout the United States. As a result, Plaintiffs seek consolidation in the Eastern District of New York.

## BACKGROUND

Plaintiffs allege that Ally Financial Inc., Alpaca Securities LLC, Cash App Investing LLC, Square Inc., Morgan Stanley Smith Barney LLC, E*Trade Securities LLC, E*Trade Financial

Corporation, E*Trade Holdings, LLC, Etoro USA Securities, Inc.,[1] Freetrade, Ltd, Interactive Brokers LLC, M1 Finance, LLC, Open to the Public Investing, Inc., Robinhood Financial, LLC, Robinhood Markets, Inc., Robinhood Securities, LLC, IG Group Holdings PLC, Tastyworks, Inc., TD Ameritrade, Inc., The Charles Schwab Corporation, Charles Schwab & Co., Inc., FF Trade Republic Growth, LLC, Trading 212 Ltd., Trading 212 UK, Ltd., Webull Financial LLC, Fumi Holdings, Inc., Stash Financial, Inc., Barclays Bank PLC, Citadel Securities LLC, Melvin Capital Management LP, Sequoia Capital Operations LLC, Apex Clearing Corporation, The Depository Trust & Clearing Corporation (hereinafter cumulatively referred to as "Defendants")[2] conspired to deprive individual retail investors of their ability to invest in the open market in the midst of an unprecedented stock rise in GameStop, Inc. (GME), AMC Entertainment Holdings, Inc. (AMC), American Airlines Group Inc. (AAL), Bed Bath & Beyond Inc. (BBY), Blackberry Ltd. (BB), Castor Maritime, Inc. (CTRM), Express, Inc. (EXPR), Koss Corporation (KOSS), Naked Brand Group Ltd. (NAKD), Nokia Corp. (NOK), Sundial Growers Inc. (SNDL), Tootsie Roll Industries,

---

[1] Plaintiffs voluntarily dismissed without prejudice Defendant Etoro USA Securities, Inc. from this action on February 23, 2021 after Etoro advised Plaintiffs' counsel that they do not sell securities within the United States.

[2] The Defendants are further classified as:
1. "Brokerage Defendants" that include: Ally Financial Inc., Alpaca Securities, LLC, Cash App Investing LLC, Square Inc., Morgan Stanley Smith Barney LLC, E*Trade Securities LLC, E*Trade Financial Corporation, E*Trade Financial Holdings, LLC, Etoro USA Securities, Inc., Freetrade, Ltd., Interactive Brokers LLC, M1 Finance, LLC, Open to the Public Investing, Inc., Robinhood Markets, Inc., Robinhood Financial, LLC, Robinhood Securities, LLC, Barclays Bank PLC, Stash Financial, Inc., IG Group Holdings PLC, Tastyworks, Inc., Charles Schwab Corporation, Charles Schwab & Co. Inc., TD Ameritrade, Inc., FF Trade Republic Growth, LLC, Trading 212 Ltd., Trading 212 UK Ltd, Fumi Holdings, Inc. and Webull Financial LLC.
2. "Fund Defendants" that include: Citadel Enterprise Americas LLC, Citadel Securities LLC, Citadel Enterprise Americas LLC, Melvin Capital Management LP, and Sequoia Capital Operations LLC.
3. "Clearinghouse Defendants" that include: Apex Clearing Corporation and The Depository Trust & Clearing Corporation.

2

Inc. (TR), and Trivago N.V. (TRVG) (collectively hereinafter referred to as "Relevant Securities") so that the Defendants could shield themselves from incurring substantial losses as a result of their own high-risk short selling strategies. The Brokerage Services behavior was in violation of Section 1 of the Sherman Act, 15 U.S.C. §1, Section 16 of the Clayton Act, 15 U.S.C. § 26, state antitrust and consumer protections laws and common law.

This action stems from Defendants conspiring to prevent retail investors, such as the Plaintiffs and other members of the Class, from being able to buy shares of the Relevant Securities. Retail investors are non-professional market participants who generally invest smaller amounts and trade through traditional or online brokerage firms, such as the Brokerage Defendants, or other types of investment accounts through websites, apps, and/or other trading platforms. Retail investors do not manage money on anyone's behalf, rather, they manage their own money. Unlike retail investors, institutional investors, such as the Fund Defendants, are companies or organizations that invest money on behalf of other people or institutions. As a result of their size and resources, institutional investors are considered savvier than the average retail investor and are often subject to less regulatory oversight. Simply stated, retail investors are the David and institutional investors are the Goliath.

On or about January 11, 2021, stock prices in the Relevant Securities began to rise, due in large part to retail investors exchanging information regarding investments on social networking sites, such as Reddit, and their purchases of "long positions" in the Relevant Securities companies, including stocks, options, contracts and other securities. As a result of the heightened buying activity by retail investors in the Relevant Securities, the stock price of these securities skyrocketed.

Meanwhile, the institutional investors, including the Fund Defendants, acquired massive "short" positions in the Relevant Securities. In doing so, the Fund Defendants made highly speculative bets. When the stock price of the Relevant Securities increased in value, in large part as a result of retail investors purchasing the Relevant Securities, the Fund Defendants, Clearinghouse Defendants, and unnamed co-conspirators were exposed to potential losses of several billion dollars.

With the retail investors continuing to increase their long positions and increasing the stock prices of the Relevant Securities, the Fund Defendants experienced a "short squeeze." In order to attempt and/or to mitigate the "short squeeze" the Defendants orchestrated an anticompetitive scheme to limit trading in the Relevant Securities by retail investors. Upon information and belief, after the market closed on January 27, 2021, during after-hours trading, institutional investors continued to take more short positions in GME (one of the Relevant Securities) thereby insinuating a GME sell off. Nonetheless, chatter in the retail investor forums, such as Reddit, indicated that the retail investors would continue purchasing stock of the Relevant Securities.

However, on January 28, 2021, Plaintiffs and the members of the Class woke up to learn the Brokerage Defendants, such as Robinhood, had suddenly and without prior notice restricted their ability to buy long positions in the Relevant Securities by disabling all buy features on their respective websites and/or mobile applications. Upon information and belief, some retail investors had their queued purchase orders cancelled without their consent, while others were unable to search for the Relevant Securities on certain of the Brokerage Defendants' platforms.

Defendants anticompetitive scheme to restrict investors from purchasing the Relevant Securities created a one-way sell situation thereby forcing retail investors to either hold or sell their rapidly declining stocks leading to a massive sell-off and resulting in an even steeper decline

in the prices of the Relevant Securities. Meanwhile, these restrictions did not extend to Fund Defendants. Thus, the Fund Defendants were able to cover their short positions by buying securities at the artificially reduced price.

Indeed, not all brokerages joined in the conspiracy. However, the Clearinghouse Defendants raised the fees for brokerages and/or removed the brokerages' ability to fill purchases in the Relevant Securities if they refused to comply with the anticompetitive conduct. By so doing, the Clearinghouse Defendants further facilitated the Fund Defendants covering their position in furtherance of the conspiracy.

The Defendants continued their anticompetitive behavior after January 28, 2021 by heavily restricting the number of shares that retail investors were able to purchase of certain Relevant Securities.

Plaintiffs filed their action in the Eastern District of New York as a class action. Overall, forty-four (44) actions involving all or a material part of the same subject matter and substantially all the same parties as the instant action have been filed across the country (collectively hereinafter referred to as "Related Actions"). Plaintiffs expect that further substantially similar actions will be filed in the Eastern District of New York and other Federal District Courts throughout the United States. As a result, Plaintiffs seek to consolidate all the actions in the Eastern District of New York. The Eastern District of New York is the most convenient forum to consolidate the actions.

## **LEGAL ARGUMENT**

The Relevant Actions are filed throughout the country with no one state serving a nexus for the litigation. Applying relevant factors such as convenience to the parties, centralization of the Relevant Actions in the Eastern District of New York is warranted. Additionally, Plaintiffs

suggest that the Honorable LaShann DeArcy Hall is an appropriate transferee judges as she is not currently presiding over any MDL actions.

I.  **The Related Actions are the type of actions that the Judicial Panel On Multidistrict Litigation considers appropriate for centralization.**

Pursuant to 28 U.S.C. §1407(a) centralization of related actions are appropriate where: (1) the cases involve common questions of fact; (2) consolidation for pretrial proceedings will serve the convenience of the parties and witnesses; and (3) centralization will promote just and efficient conduct of the litigation. *See In re Anthem, Inc., Customer Data Security Breach Litig.*, 109 F.Supp.3d 1364, 1365 (J.P.M.L. 2015). All three considerations weight in favor of transfer and centralization in the Eastern District of New York.

The Related Actions should be centralized into one multidistrict litigation.[3] The Related Actions allege substantially similar antirust claims as class actions under the *Fed. R. Civ. P.* 23. The Related Actions involve common questions of fact and law. The crux of this action, and the Related Actions, is whether the Defendants conspired in an anti-competitive scheme to manipulate the market by restricting Plaintiffs and the Class from purchasing shares of the Relevant Securities. The Related Actions will share the same factual questions as to whether the Defendants' behavior, in attempting to restrict individual investors' ability to purchase the Relevant Securities supports the creation of the MDL. Since all the Related Actions involve complex common questions of fact concerning allegations of conspiracy amongst the Defendants, overlapping discovery and related pretrial proceedings, centralization is appropriate to prevent inconsistent pretrial rulings. *In re Uranium Indus. Antitrust Litig.*, 458 F.Supp. 1223, 1228 (J.P.M.L. 1978) ("As all parties recognize, the TVA actions involve numerous complex questions of fact concerning the conspiracy

---

[3] At the time of the filing of this Response, it seems that all parties agree that consolidation of the actions in one district is appropriate and necessary. No party filed an opposition to consolidation.

allegations in the TVA's complaints. Centralization of those actions in a single district under Section 1407 is necessary to eliminate duplication of discovery and prevent inconsistent pretrial rulings."); *In re Gas Meter Antitrust Litig.*, 464 F.Supp. 391, 393 (J.P.M.L. 1978) ("[T]ransfer of these actions to a single district under Section 1407 will ensure the streamlining of discovery and all other pretrial proceedings as well."); *In re Darvocet, Davon and Propoxyphene Prod. Liab. Litig.*, 780 F.Supp.2d 1379, 1380-81 (J.P.M.L. 2011) ("Centralization would help limit duplicative discovery, prevent inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel and particularly the judiciary."); *In re Vytorin/Zetia Marketing, Sales Practices and Prod. Liab. Litig.*, 543 F.Supp.2d 1378, 1380 (J.P.M.L. 2008) ("Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including those with respect to certification of class actions; and conserve the resources of the parties, their counsel and the judiciary.").

Given these common issues and the volume of claims, centralization will serve the convenience of the parties and witnesses, while promoting the just and efficient conduct of litigation. *In re Gas Meter Antitrust Litig.*, 464 F.Supp. at 392 ("We find that these actions involve common questions of fact and that the transfer of the Illinois action to the Eastern District of Pennsylvania for coordinated and consolidated proceedings with the three actions pending there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation."). In just under a month, forty-four (44) actions have been filed in District Courts throughout the country involving all or a material part of the same subject matter and substantially the same defendants as in the instant action. Centralization is therefore appropriate to address these overlapping claims.

Absent transfer and coordination, there is a significant risk that litigation of the Related Actions will be anything but just and efficient. In litigating different cases involving the same factual and legal allegations in different courts, the parties face the prospect of district courts entering inconsistent rulings affecting discovery, class certification, and the ultimate disposition of the disputes. As the parties engage in duplicative discovery and motion practice severe inefficiencies would occur and the resources of the judiciary will be unnecessarily wasted.

Additionally, absent transfer, centralization, coordination, the parties to the Related Actions may be subject to duplicative discovery requests and inconsistent pretrial orders. Individual witnesses may be subject to multiple depositions, interviews, and other pretrial proceedings. Transfer and coordination will obviate these concerns by limiting duplicative discovery and facilitating consistency before a single transferee court.

**II.     The MDL Should be Transferred to the Eastern District of New York.**

**A.     The Eastern District of New York is a Convenient Forum.**

Centralization of the actions in the Eastern District of New York is geographically the most convenient locale for all the parties and counsel. While the anticompetitive conduct at issue in the Related Actions occurred nationwide, the "center of gravity" of the allegations supports a finding that the Eastern District of New York is best situated to handle this MDL. The alleged anti-competitive behavior is inextricably tied to activity occurring on Wall Street and within the Financial District in New York. The Eastern District of New York is a mere two to three (2-3) subway stops from Wall Street or 15-minute car ride.

Additionally, a plurality of defendants are headquartered in New York. Morgan Stanley Smith Barney has its headquarters in New York. While E*Trade Securities LLC, E*Trade Financial Corporation and E*Trade Financial Holdings, LLC are not headquartered in New York,

Morgan Stanley is their owner and ultimate parent. Defendants Open to the Public Investing, Inc. ("Public.com"), Barclays Bank PLC, Stash Financial, Inc., Webull Financial LLC, Melvin Capital Management LP and The Depository Trust & Clearing Corporation are all also headquartered in New York. Defendant Interactive Brokers LLC is headquartered in neighboring Greenwich, Connecticut. Importantly, a plurality of cases (10 of 44) are based in or around the Eastern District of New York making it a focal point for litigation.[4]

These parties are likely to have relevant witnesses and evidence applicable to all related cases. *In re Darvocet, Davon and Propoxyphene Prod. Liab. Litig.*, 780 F.Supp.2d at 1382 (Granting transfer to the district where the defendant's headquarters were located as "[r]elevant documents and witnesses" were likely located there); *In re Vytorin/Zetia Marketing, Sales Practices and Prod. Liab. Litig.*, 543 F.Supp.2d at 1380. Since a plurality of defendants have headquarters located in or near the Eastern District of New York, the convenience of the parties and witnesses is plainly served by transferring the case to that District.

The Eastern District of New York is also home to two major airports, John F. Kennedy International Airport ("JFK") and LaGuardia Airport.[5] This makes the Eastern District of New York the most convenient forum for the defendants based outside of the United States as there are numerous flights to and from JFK and/or Newark.[6] Between the three airports, the Plaintiffs and

---

[4] In addition to the instant action, and based on movant's schedule of actions, three cases are in the District of New Jersey, two cases are in the Southern District of New York, two cases are in the District of Connecticut, one case is in the Eastern District of Pennsylvania, and one case is in the Western District of Pennsylvania.

[5] A third airport, Newark Liberty International Airport is about 25 miles away.

[6] These Defendants include Freetrade, Ltd. and Trading 212 UK Ltd. based in London, United Kingdom, Defendant Trading 212 Ltd. Based in Sofia, Bulgaria, and Fumi Holdings based in Hunan, China.

the Defendants have an almost unlimited choice of flights when in-person court conferences are required.

### B. The Eastern District of New York has Sufficient Resources and Particularized Expertise to Manage the Case.

The Eastern District of New York has the capacity to efficiently manage the pretrial proceedings of the Related Actions. *See In re Lending Tree, LLC, Customer Data Security Breach Litig.,* 581 F.Supp.2d 1367, 1368 (J.P.M.L. 2008) (Considering the capacity of the proposed transferee district and the fact that it had been underutilized as a transferee district); *In re Nifedipine Antitrust Litig.*, 266 F.Supp.2d 1382, 1382-83 (J.P.M.L. 2003) (Centralizing antitrust cases in a district whose docket is "well suited for the expeditious handling of this litigation."). Based upon a docket search on the J.P.M.L. website, there are only five (5) MDL actions open and/or pending in the Eastern District of New York. (Declaration of Frank Schirripa in Support of Response [hereinafter "Schirripa Dec."] ¶3, Ex. B).

In contrast, the Northern District of California, movant's preferred district, has at least nineteen (19) MDL actions open and/or pending. (Schirripa Dec. ¶2, Ex. A). Thus, the Northern District of California is inundated with MDL actions that require significant judicial resources while the Eastern District is underweighted with MDL actions and has the capacity to handle the instant Litigation.

Judge Hall is currently presiding over the instant action in the Eastern District of New York. Judge Hall is an accomplished, well-respected jurist. She has significant experience in trying complex commercial actions. Moreover, transfer and coordination of the Related Actions before Judge Hall would not unnecessarily burden her docket since she is not currently presiding over any other MDL litigation. The Panel can be confident that Judge Hall "will steer this litigation

on a prudent course." *See In re Frito-Lay N. Am. Inc. "All Natural" Litig.*, 908 F.Supp.2d 1379, 1380 (J.P.M.L. 2012).

### C.   None of the Related Cases have Progressed Significantly.

A final factor that the Panel considers is the existence and progress of any related pending litigation, including whether any judge has become particularly familiar with the claims at issue. Plaintiffs have communicated with a plurality of counsel regarding service and scheduling related matters.  Service was perfected on a plurality of Defendants by way of an executed Waiver of the Service of Summons, and Defendants' counsel are in the process of interposing appearances in the action.  Plaintiffs have also made significant progress in serving the international defendants. Additionally, Plaintiffs and a plurality of Defendants' counsel engaged in scheduling related discussions.  Plaintiffs also dismissed Etoro USA Securities, Inc. from this action after counsel had significant discussions and counsel for Etoro represented that Etoro does not trade securities in the United States.

The facts that gave rise to the instant action and the Related Actions only occurred within the last month.  Given the numerosity of the Defendants and that there are Defendants that are outside the jurisdiction of the United States, Plaintiffs have made significant progress in advancing their action.  Additionally, upon information and belief, no discovery has been completed and no dispositive motions were filed in any of the Related Actions.  Therefore, there is little chance that any of the Related Actions have proceeded to such an extent that all other actions should be consolidated within any other court.

### **CONCLUSION**

The Eastern District of New York is the most appropriate district for transfer, centralization, and coordination of the Related Actions.  For the foregoing reasons, the Panel

should centralize the Related Actions and all future actions in the Eastern District of New York before the Honorable LaShann DeArcy Hall.

Dated: March 1, 2021

Respectfully submitted,
**HACH ROSE SCHIRRIPA & CHEVERIE, LLP**

By:   /s/ *Frank Schirripa*
Frank R. Schirripa
Kathryn Hettler
Eugene Zaydfudim
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: (212) 213-8311
Fax: (212) 779-0028
*Counsel for Dan Dechirico, Angel Guzman and Joshua Palmer*