# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| STEPHEN D'AGOSTINO and JANELLE BURCH, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>ALLY FINANCIAL INC.; ALPACA SECURITIES LLC; CASH APP INVESTING LLC; SQUARE INC.; DOUGH LLC; MORGAN STANLEY SMITH BARNEY LLC; ETRADE SECURITIES LLC; ETRADE FINANCIAL CORPORATION; ETRADE FINANCIAL HOLDINGS, LLC; ETORO USA SECURITIES, INC.; FREETRADE, LTD.; INTERACTIVE BROKERS LLC; M1 FINANCE, LLC; OPEN TO THE PUBLIC INVESTING, INC.; ROBINHOOD FINANCIAL, LLC; ROBINHOOD MARKETS, INC.; ROBINHOOD SECURITIES, LLC; IG GROUP HOLDINGS PLC; TASTYWORKS, INC.; TD AMERITRADE, INC.; THE CHARLES SCHWAB CORPORATION; CHARLES SCHWAB & CO. INC.; FF TRADE REPUBLIC GROWTH, LLC; TRADING 212 LTD.; TRADING 212 UK LTD.; WEBULL FINANCIAL LLC; FUMI HOLDINGS, INC.; STASH FINANCIAL, INC.; CITADEL ENTERPRISE AMERICAS, LLC; CITADEL SECURITIES LLC; MELVIN CAPITAL MANAGEMENT LP; SEQUOIA CAPITAL OPERATIONS LLC; APEX CLEARING CORPORATION; and THE DEPOSITORY TRUST & CLEARING CORPORATION,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Stephen D'Agostino and Janelle Burch, (collectively, "Plaintiffs") individually and on behalf of all others similarly situated, bring this action for treble damages under the antitrust laws of the United States against Defendants. Plaintiffs complain and allege upon information and belief, except as to those paragraphs applicable to the named Plaintiffs, which are based on personal knowledge, as follows:

## NATURE OF THE CASE

1.      This lawsuit seeks to recover injuries suffered by small stock market investors who thought they had identified undervalued stocks. What they did not know was that large, well-connected stock traders (including the Fund defendants identified below) had been using many of these same stocks to generate profits by trading in short derivatives, betting that the stock prices would remain low or even continue to drop. When the plaintiff class' stock purchasing threatened the Fund defendants' derivative income, they responded by illegally conspiring with the other defendants to block plaintiffs from being able to purchase additional stocks.

2.      The stock market is supposed to function as a competitive market where stock prices are determined by the basic laws of supply and demand. As more investors seek to buy a stock, the demand increases as they bid more for the stock that is available and, in turn, the market price for the stock increases. Conversely, when more investors seek to sell stock they own, the supply of stock available for sale increases and, in turn, the market price for the stock decreases.

3.      Leading up to January 27, 2021, Plaintiffs, using online forums, identified several stocks that they believed were priced below their fair value. Moreover, several large hedge funds had aggressively purchased short positions in these stocks. Sometimes, the volume of the short positions traded by these large hedge funds even exceeded the total number of stock shares that actually existed, with the artificial oversupply of short shares further depressing their market price.

2

4.      Defendants Robinhood, Schwab, TD Ameritrade, WeBull, ETrade, and IB (defined below as the "Broker Defendants") offer online brokerage services to retail investors, allowing investors such as Plaintiffs to trade in stocks without incurring significant charges. Plaintiffs used the online Broker Defendants to purchase stocks in the companies they had identified. In response to these stock purchases, the prices of many of these stocks rose. This in turn put pressure on the defendant traders—who had shorted the stock (betting that its price would remain low or fall) in quantities greater than the number of shares that existed (a practice called "naked short selling")—to buy stock in order to cover their losses or forestall potentially greater losses.

5.      The combined purchases by Plaintiffs and by the hedge funds seeking to cover their short positions, in turn, created a "short squeeze," where the price of a stock that had been heavily shorted quickly jumps sharply higher. This feedback loop (rising prices causing short investors to purchase the stock, creating even more upward pressure on the price of the stock) can cause short sellers to lose immense amounts of money.

6.      Plaintiffs stood to benefit from the short squeeze as the value of the stocks they purchased increased at the expense of the Defendants who held short positions and were compelled to purchase the stock at the current (and rising) prices in order to cover their positions and mitigate their potential losses.

7.      Faced with the prospect of huge losses on their short positions, Defendants came up with a scheme to drive the price of the stocks down by agreeing among themselves to limit the ability of the Plaintiffs to purchase more shares of stock while only allowing them to sell the shares they already held. Accordingly, as part of Defendants scheme, the Brokerage Defendants who operated the trading platforms used by Plaintiffs and other retail investors purposefully, willfully, and knowingly removed the ability of their customers to purchase certain stocks from their trading

platforms in the midst of the short squeeze, depriving retail investors of the ability to invest in the open market and manipulating the open market to artificially lower prices.

8.    As explained below, these illegal restrictions, along with the other actions taken by the Defendants, harmed Plaintiffs.

## JURISDICTION AND VENUE

9.    Plaintiffs bring this action under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries that Plaintiffs and the other Class members have suffered from Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

10.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 4 of the Clayton Act, 15 U.S.C. § 15(a).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

11.    This Court has personal jurisdiction over each Defendant because each Defendant transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of their illegal scheme and price-fixing conspiracy throughout the United States and including in this District. The conspiracy was directed at, and had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District. In addition, Defendant Robinhood Securities, LLC has their principal place of business located in this District.

12.    Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a) and 22, and 28 U.S.C § 1391(b), (c), and (d). During the Class Period, Defendants resided, transacted business, were found, or had agents in this District, a substantial portion of the affected interstate trade and

commerce discussed below has been carried out in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**PARTIES**

### I.   Plaintiffs

13.     Plaintiff Stephen D'Agostino is a resident and citizen of Pennsylvania. Plaintiff is a retail investor who uses TD Ameritrade as his brokerage. Plaintiff was actively trading in GameStop Corp. ("GME"), BlackBerry Ltd. ("BB"), and Nokia Corp. ("NOK") from January 26 through January 28, 2021. Over that time, Plaintiff purchased 26 shares of GME, 1 put option on GME, 20 shares of BB, and 100 shares of NOK. Plaintiff sold 25 shares of GME and 1 put option on GME. At some time between 9:34 AM and 11:42 AM on January 28, Plaintiff attempted to execute trades in GME, BB, and NOK but was prohibited by TD Ameritrade from executing trades and/or was locked out of the TD Ameritrade website. TD Ameritrade prevented Plaintiff from participating in the stock market as a retail investor during that period. Accordingly, Plaintiff was unable to buy the Relevant Securities that he was planning to trade while TD Ameritrade restricted Plaintiff's ability to trade, potentially preventing Plaintiff from realizing gains from trading the Relevant Securities.

14.     Plaintiff Janelle Burch is a resident and citizen of California. Plaintiff is a retail investor who uses ETrade as her brokerage. Plaintiff purchased 347 shares of GME on various dates since December 2020. On January 27 and 28, 2021, Plaintiff sold 140 shares of GME. On January 28, Plaintiff attempted to purchase GME but was prohibited by ETrade from executing the purchases. ETrade prevented Plaintiff from participating in the stock market as a retail investor during that period. Accordingly, Plaintiff was unable to buy the Relevant Securities that she was planning to trade while ETrade restricted Plaintiff's ability to trade, potentially preventing Plaintiff from realizing gains from trading the Relevant Securities.

5

## II.   Defendants

### A.   Brokerage Defendants

15.     Defendant Ally Financial Inc. ("Ally") is a Delaware corporation with its principal place of business at Ally Detroit Center 500, Woodward Ave., Floor 10, Detroit, Michigan. Ally provides financial services including an electronic trading platform to trade financial assets. Ally was a brokerage for Class members who traded the Relevant Securities during the Class Period.

16.     Defendant Alpaca Securities LLC ("Alpaca") is a Delaware corporation with its principal place of business at 20 N San Mateo Drive Suite 10, San Mateo, California. Alpaca provides financial services including an electronic trading platform to trade financial assets. Alpaca was a brokerage for Class members who traded the Relevant Securities during the Class Period.

17.     Defendant Square Inc. ("Square") is a Delaware corporation with its principal place of business at 1455 Market Street, Suite 600, San Francisco, California.

18.     Defendant Cash App Investing LLC is a Delaware corporation with its principal place of business at 920 SW 6th Avenue Ste. 1200, Portland, Oregon. Cash App Investing is a wholly owned subsidiary of Square Inc. (collectively, "Cash App"). Cash App provides financial services including an electronic trading platform to trade financial assets. Cash App was a brokerage for Class members who traded the Relevant Securities during the Class Period.

19.     Defendant Dough LLC ("Dough") is a Delaware limited-liability corporation with its principal place of business at 327 N. Aberdeen Street, Chicago, Illinois. Dough provides financial services including an electronic trading platform to trade financial assets. Dough was a brokerage for Class members who traded the Relevant Securities during the Class Period.

20.     Defendant Morgan Stanley Smith Barney LLC ("Morgan Stanley") is a Delaware limited liability corporation and parent company of ETrade with its principal place of business at

6

1585 Broadway Avenue, New York, New York. Morgan Stanley is the owner and ultimate parent of ETrade Securities LLC, ETrade Financial Corporation, and ETrade Financial Holdings (collectively, "ETrade").

21.     Defendant ETrade Securities LLC is a Delaware limited-liability corporation with its principal place of business at 671 North Glebe Road, Ballston Tower, Arlington, Texas.

22.     Defendant ETrade Financial Corporation is a Delaware corporation with its principal place of business at 671 North Glebe Road, Ballston Tower, Arlington, Texas.

23.     Defendant ETrade Financial Holdings, LLC is a Delaware limited-liability corporation with its principal place of business at 671 North Glebe Road, Ballston Tower, Arlington, Texas.

24.     ETrade provides financial services including an electronic trading platform to trade financial assets. ETrade was a brokerage for Class members who traded the Relevant Securities during the Class Period.

25.     Defendant eToro USA Securities, Inc. ("eToro") is a Delaware corporation and owner of the application eToro with its principal place of business at 221 River St., 9th floor, Hoboken, New Jersey. eToro provides financial services including an electronic trading platform to trade financial assets. eToro was a brokerage for Class members who traded the Relevant Securities during the Class Period.

26.     Defendant Freetrade, Ltd. ("Freetrade") is a company incorporated in the United Kingdom with its principal place of business at 32-38 Leman Street, London, United Kingdom. Freetrade provides financial services including an electronic trading platform to trade financial assets. Freetrade was a brokerage for Class members who traded the Relevant Securities during the Class Period.

7

27.     Defendant Interactive Brokers LLC ("Interactive Brokers") is a Delaware limited liability corporation with its principal place of business at 1 Pickwick Plaza, Greenwich, Connecticut. Interactive Brokers provides financial services including an electronic trading platform to trade financial assets. Interactive Brokers was a brokerage for Class members who traded the Relevant Securities during the Class Period.

28.     Defendant M1 Finance, LLC ("M1 Finance") is a Delaware corporation with its principal place of business at 200 North La Salle Street, Suite 800, Chicago, Illinois. M1 Finance provides financial services including an electronic trading platform to trade financial assets. M1 Finance was a brokerage for Class members who traded the Relevant Securities during the Class Period.

29.     Defendant Open To The Public Investing, Inc. ("Public.com") is a New York corporation with its principal place of business at 1 State Street Plaza, 10th Floor, New York, New York. Public.com provides financial services including an electronic trading platform to trade financial assets. Public.com was a brokerage for Class members who traded the Relevant Securities during the Class Period.

30.     Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California. Defendant Robinhood Markets, Inc. is the corporate parent of and controls the affairs of Defendants Robinhood Financial, LLC and Robinhood Securities, LLC.

31.     Defendant Robinhood Financial, LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California. It is a wholly owned subsidiary of Robinhood Markets, Inc.

32.     Defendant Robinhood Securities, LLC is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida. It is a wholly owned subsidiary of Defendant Robinhood Markets, Inc.

33.     Robinhood Markets, Inc., Robinhood Financial, LLC, and Robinhood Securities, LLC (collectively, "Robinhood") provide financial services including an electronic trading platform to trade financial assets. Robinhood was a brokerage for Class members who traded the Relevant Securities during the Class Period.

34.     Defendant Stash Financial, Inc. is a Delaware corporation and owner of the application Stash with its principal place of business at 500 7th Avenue, 18th Floor, New York, New York. Stash provides financial services including an electronic trading platform to trade financial assets. Stash was a brokerage for Class members who traded the Relevant Securities during the Class Period.

35.     Defendant IG Group Holdings PLC is a Delaware public limited company and ultimate corporate parent of Tastyworks, Inc. with its principal place of business at 200 West Jackson Blvd., Suite 1450, Chicago, Illinois.

36.     Defendant Tastyworks, Inc. is a Delaware corporation and wholly owned subsidiary of IG Group Holdings PLC with its principal place of business at 100 West Fulton Market Street, Suite 220, Chicago, Illinois.

37.     IG Group Holdings PLC and Tastyworks, Inc. (collectively, "Tastyworks") provide financial services including an electronic trading platform to trade financial assets. Tastyworks was a brokerage for Class members who traded the Relevant Securities during the Class Period.

38.     Defendant The Charles Schwab Corporation is a Delaware corporation with its principal place of business at 211 Main Street, San Francisco, California. The Charles Schwab

Corporation is the ultimate corporate parent of and controls the affairs of Charles Schwab & Co., Inc. and TD Ameritrade Inc.

39.     Defendant Charles Schwab & Co. Inc. is a California corporation with its principal place of business at 211 Main Street, San Francisco, California. Charles Schwab & Co. Inc. is a wholly owned subsidiary of The Charles Schwab Corporation.

40.     Defendant TD Ameritrade, Inc., is a New York corporation with its principal place of business in Illinois. As of October 2020, The Charles Schwab Corporation acquired TD Ameritrade, Inc.

41.     The Charles Schwab Corporation, Charles Schwab & Co., Inc., and TD Ameritrade, Inc. (collectively, "TD Ameritrade") provide financial services including an electronic trading platform to trade financial assets. TD Ameritrade was a brokerage for Class members who traded the Relevant Securities during the Class Period.

42.     Defendant FF Trade Republic Growth, LLC ("Trade Republic") is a Delaware corporation with its principal place of business at One Letterman Drive, Building D, 5th Floor, San Francisco, California. Trade Republic provides financial services including an electronic trading platform to trade financial assets. Trade Republic was a brokerage for Class members who traded the Relevant Securities during the Class Period.

43.     Defendant Trading 212 Ltd. is a Bulgarian company with its principal place of business at 3 Lachezar Stanchev Str., Litex Tower, Floor 10, Sofia 1797, Bulgaria. Trading 212 Ltd. is the ultimate corporate parent of and controls the affairs of Trading 212 UK Ltd.

44.     Defendant Trading 212 UK Ltd. is a company incorporated in the United Kingdom with its principal place of business at 107 Cheapside, London, United Kingdom. Trading 212 UK Ltd. is a wholly owned subsidiary of Trading 212 Ltd. (collectively, "Trading 212"). Trading 212

provides financial services including an electronic trading platform to trade financial assets. Trading 212 was a brokerage for Class members who traded the Relevant Securities during the Class Period.

45.    Defendant Fumi Holdings, Inc. is a Chinese corporation. Fumi Holdings, Inc. and with its principal place of business in Hunan, China. Fumi Holdings, Inc. is the corporate parent of, and controls the affairs of WeBull Financial LLC.

46.    Defendant WeBull Financial LLC is a Delaware corporation and wholly owned subsidiary of Fumi Holdings, Inc. with its principal place of business at 44 Wall Street, Ste 501, New York, New York. WeBull is a wholly owned subsidiary of Fumi Holdings, Inc. (collectively, "WeBull"). WeBull provides financial services including an electronic trading platform to trade financial assets. WeBull was a brokerage for Class members who traded the Relevant Securities during the Class Period.

**B. Fund Defendants**

47.    Defendant Citadel Enterprise Americas LLC is a Delaware limited liability corporation with its principal place of business at 131 South Dearborn Street, Chicago, Illinois. Citadel Enterprise Americas LLC is the corporate parent of and controls the affairs of Citadel Securities LLC.

48.    Defendant Citadel Securities LLC is a Delaware limited corporation, with its principal place of business at 131 South Dearborn Street, Chicago, Illinois. Citadel Securities LLC is a wholly owned subsidiary of Citadel Enterprise Americas LLC.

49.    Citadel Enterprise Americas, LLC and Citadel Securities LLC (collectively, "Citadel") took short positions in the Relevant Securities. Citadel actively participated in the conspiracy and the wrongful acts alleged herein.

50.     Defendant Melvin Capital Management LP (hereinafter "Melvin Capital") is a Delaware limited partnership with its principal place of business at 535 Madison Avenue, 22nd Floor, New York, New York. Defendant Melvin Capital took short positions in the Relevant Securities. Melvin Capital actively participated in the conspiracy and the wrongful acts alleged herein.

51.     Defendant Sequoia Capital Operations LLC ("Sequoia") is a Delaware limited liability corporation with its principal place of business at 2800 Sand Hill Road, Suite 101, Menlo Park, California. 65. Defendant Sequoia actively participated in the conspiracy and the wrongful acts alleged herein.

### C. Clearinghouse Defendants

52.     Defendant Apex Clearing Corporation ("Apex") is a New York corporation with its principal place of business at One Dallas Center, 350 N. St. Paul, Suite 1300, Dallas, Texas. Apex actively participated in the conspiracy and the wrongful acts alleged herein.

53.     Defendant The Depository Trust & Clearing Corporation ("DTCC") is a New York company with its principal place of business at 55 Water Street, New York, New York. DTCC actively participated in the conspiracy and the wrongful acts alleged herein.

### FACTUAL ALLEGATIONS

### I.     Background

54.     In mid-January 2021, certain stocks began seeing unprecedented volatility, including GameStop Corp. (GME), AMC Entertainment Holdings Inc. (AMC), American Airlines Group Inc. (AAL), Bed Bath & Beyond Inc. (BBBY), BlackBerry Ltd. (BB), Express, Inc. (EXPR), Koss Corporation (KOSS), Naked Brand Group Ltd. (NAKD), Nokia Corp. (NOK), Sundial Growers Inc. (SNDL), Tootsie Roll Industries, Inc. (TR), and Trivago N.V. (TRVG) (collectively, "Relevant Securities").

55.     The volatility was a result of retail investors who, having researched and evaluated the stocks, determined that they were undervalued and began purchasing them, thereby driving up the market price.

56.     On the other hand, having determined that the Relevant Securities were overvalued, the Fund Defendants held "short" positions in the Relevant Securities. While a "long" position is a typical purchase of a stock in which the investment increases in value with the price of the stock, a "short" position is essentially a bet that the stock price will go down, resulting in a loss for the investor if the price of the stock increases.

57.     A short position involves the borrowing and immediate sale of a stock which is then re-purchased and returned to the lender at a later date. The return on a short position is therefore equal to the decrease in the market price over the time period.

58.     In a 2020 filing, Defendant Melvin Capital revealed that it had a substantial short interest in GME. It was reported that Melvin Capital shorted approximately 140% of GME's total stock (meaning that it sold 40% more shares of GME than actually existed), resulting in a manipulative and potentially illegal practice known as "naked short selling" which causes the number of shares in the market to increase, which normally makes their value drop (more shares equals less value per share) and can massively disrupt the market.

59.     Despite the Fund Defendants' naked short selling, which would have tended to drive the prices down, the market volatility brought on by increased demand for the Relevant Securities by the retail investors drove the market prices up, meaning that the Fund Defendants faced the possibility of massive losses on their short positions. Increasing prices forced holders of short positions to either close-out their short positions or post additional capital to ensure that they had enough money to re-purchase and return the shorted stocks. As holders of short positions re-

purchase the shorted stocks, this further drives prices up, creating a cycle of increasing demand and market prices known as a "short squeeze."

60.     Rather than realize the losses of their risky short positions, the Fund Defendants conspired with the Brokerage Defendants and Clearinghouse Defendants to lower the price for the subject stocks by restricting trading by retail investors, giving the Defendants an opportunity to drive the market prices lower and regain their losses.

61.     This case is brought by individual investors—or "retail investors"—who, having invested in the Relevant Securities, were denied the opportunity to trade those securities in a free market due to the unlawful conspiracy and other conduct engaged in by Defendants, and who suffered losses or diminished gains as a result.

## II.    Demand for the Relevant Securities

62.     Popularity in the Relevant Securities began rising when small retail investors who use online communities, including WallStreetBets and YouTube, began discussing the undervaluation of the Relevant Securities in mid-2020 and began purchasing shares of the Relevant Securities.

63.     Some institutional investors also increased demand for the Relevant Securities, including: Scion Asset Management, LLC, which spent approximately $15 million purchasing GME; and Ryan Cohen, founder of Chewy.com, who invested $76 million in GME.

64.     Throughout this time, Fund Defendants were shorting the Relevant Securities.

65.     The shorting of the Relevant Securities by the Fund Defendants emboldened the retail investors who believed the Relevant Securities were undervalued and saw an opportunity to profit from the Fund Defendants' poor analysis.

66.     More and more retail investors began purchasing the Relevant Securities, resulting in a short squeeze beginning on or around January 21, 2021 when the prices of the Relevant Securities began to surge.

67.     For example, from January 8 to January 27, 2021, GME increased from $17.69 to $347.51. Other Relevant Securities experienced similarly unprecedented increases in market price.

## III.    Trading Restrictions

68.     The stock market in the United States is typically open for trading from 9:30 AM to 4:00 PM, Monday through Friday. Retail investors cannot trade stocks after hours. Only large institutional investors like the Fund Defendants can trade after hours.

69.     Evidence of the Defendants' collusion began after the stock market closed on January 27, 2021, when after-hours trading revealed suspicious, coordinated trading by the Defendants on the Relevant Securities.

70.     Defendants' short trading in the Relevant Securities before the market opened on January 28, 2021 was counterintuitive. Absent an agreement to drive down prices for the Relevant Securities, it would not have been in the Defendants' economic best interest to continue or expand short selling the Relevant Securities, yet, prior to market open on January 28, institutional investors took more short positions, seemingly anticipating an end to the short squeeze.

71.     While it is likely that the Fund Defendants engaged in the after-hours short selling in an effort to recoup their losses from the short squeeze, there was nothing that would have supported this action. In fact,  Discussions by retail investors on online forums indicated that the short squeeze was not coming to an end as retail investors spoke of expanding their positions in the Relevant Securities. Popularity in the short squeeze also brought new retail investors who were interested in purchasing the Relevant Securities.

72.     When markets opened on January 28, 2021, the Brokerage Defendants each announced unprecedented restrictions on retail investing in the Relevant Securities. For example:

     a.   Robinhood restricted purchasing—but not selling—of the Relevant Securities by removing the "buy" button from the Relevant Securities' pages. Robinhood also cancelled retail investors' queued purchases in the Relevant Securities set to execute when markets opened. Robinhood also blocked searching for the Relevant Securities in their mobile app. Retail investors reported the unauthorized sale of the Relevant Securities from the Robinhood accounts. Robinhood later slowly increased the permitted number of shares of stock in the Relevant Securities.

     b.   Stash prohibited retail investors from viewing or trading the Relevant Securities.

     c.   ETrade halted trading in GME and AMC, preventing users from purchasing stock.

     d.   TD Ameritrade placed restrictions on the trading of GME, AMC, and other securities on its platforms.

73.     Without the ability to purchase the Relevant Securities (but with the ability to sell left intact), the trading restrictions prompted a turnaround in the market and the market prices of the Relevant Securities began dropping.

74.     For example, on January 28, 2021, GME fell 44.11%. There was no legitimate reason for the Defendants to implement the trading restrictions; the SEC never recommended the trading restrictions that the Brokerage Defendants instituted. Indeed, the SEC announced an investigation into the short squeeze and trading restrictions on January 29, 2021 and stated that it would "closely review actions taken by regulated entities that may disadvantage investors or otherwise unduly inhibit their ability to trade certain securities" and would "act to protect retail investors when the facts demonstrate abusive or manipulative trading activity that is prohibited by the federal securities laws."

## IV.    The Illegal Scheme

75.     Citadel serves as a "market maker" for Robinhood and engages in "payment for order flow" with Robinhood whereby trades by retail investor users of Robinhood are executed by Citadel. Citadel is Robinhood's largest provider of payment for order flow.

76.     The "payment for order flow" relationship provides Citadel with an opportunity to profit from the large amount of trading data collected by Robinhood and provides Robinhood with the revenue necessary to provide zero-commission trading to its users.

77.     The "payment for order flow" model is now commonplace throughout the retail brokerage industry.

78.     The Brokerage Defendants are reliant on payment for order flow as part of their business model.

79.     The Fund Defendants used their "payment for order flow" relationship with the Brokerage Defendants to encourage the Brokerage Defendants to restrict trading on the Relevant Securities.

80.     The Brokerage Defendants all adopted similar trading restrictions as part of an illegal scheme to decrease demand for the Relevant Securities driven by retail investors.

81.     The illegal scheme did not restrict trading by large institutional investors like the Fund Defendants who sought to profit from their control over the stock market.

82.     Despite the unprecedented increase in the prices of the Relevant Securities, it was reported that Citadel entered into more short positions. Citadel did this while instructing Robinhood to restrict the ability of retail investors to trade on the Relevant Securities, knowing that its short positions would thereby pay off.

83.     Citadel also holds a large interest in Melvin Capital and invested $2 billion into Melvin Capital to bail out its failing short positions.

84.     A whistleblower has confirmed Defendants' illegal scheme, revealing that Sequoia also pressured Robinhood into restricting trading of the Relevant Securities.

85.     Interactive Brokers' chairman Thomas Peterffy admitted that Interactive Brokers had restricted trading in order to "protect ourselves."

86.     Financial clearinghouses facilitate and streamline the stock trading process. Brokerages route trades through clearinghouses that charge fees to execute trades.

87.     The Clearinghouse Defendants increased fees on purchases for the Relevant Securities to raise the prices of the securities and decrease demand.

88.     Apex suspended trading in the Relevant Securities by non-defendant brokerage SoFi.

89.     WeBull CEO Anthony Denier said that Apex increased the capital requirement for trading GME to 100%.

90.     Denier said that Apex pressured WeBull to restrict trading in the Relevant Securities.

91.     Denier also said that Apex was instructed by DTCC to increase the capital requirements for trading the Relevant Securities.

92.     Ally, M1 Finance, Tastyworks, and Public.com also reported that Apex halted all opening transactions on the Relevant Securities.

93.     Freetrade blamed Barclay's PLC for its restrictions of the Relevant Securities.

94.     Trading212 said Interactive Brokers was at fault for Freetrade's restrictions on the Relevant Securities.

95.     On information and belief, the illegal scheme was effectuated by the Fund Defendants, Clearinghouse Defendants, and Brokerage Defendants who sought to use their control

over the stock market to regain their losses from the short squeeze and profit to the detriment of retail investors.

96.     The Clearinghouse and Fund Defendants sought to profit by reducing volatility in the Relevant Securities and thereby conspired to instruct Brokerage Defendants to restrict trading in the Relevant Securities. The Brokerage Defendants, who profit from services provided by the Clearinghouse and Fund Defendants, effectuated the requested trading restrictions.

97.     The illegal scheme unlawfully restrained trade in the Relevant Securities.

98.     The extent of the conspiracy is not yet known.

## AGENTS AND CO-CONSPIRATORS

99.     Defendants' unlawful conduct was authorized, ordered or performed by the Defendants' respective officers, agents, employees, representatives, or shareholders while actively engaged in the management, direction, or control of the Defendants' businesses or affairs.

100.    The Defendants' agents operated under the explicit and apparent authority of their principals.

101.    Each Defendant and their subsidiaries, affiliates and agents operated as a single unified entity.

102.    Various persons and/or firms not named as Defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

103.    Each Defendant acted as the principal, agent, or joint venture of, or for other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

## CLASS ACTION ALLEGATIONS

104.    Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23.

105.     The proposed Class is defined as follows:

>       All persons or entities in the United States that directly purchased
>       securities in GameStop Corp. (GME), AMC Entertainment
>       Holdings Inc. (AMC), American Airlines Group Inc. (AAL), Bed
>       Bath & Beyond Inc. (BBBY), BlackBerry Ltd. (BB), Express, Inc.
>       (EXPR), Koss Corporation (KOSS), Naked Brand Group Ltd.
>       (NAKD), Nokia Corp. (NOK), Sundial Growers Inc. (SNDL),
>       Tootsie Roll Industries, Inc. (TR), or Trivago N.V. (TRVG) from
>       one or more of the Defendants between January 1, 2021 through and
>       until the anticompetitive effects of Defendants' unlawful conduct
>       cease (the "Class Period").

106.     The Class excludes the following: Defendants, their affiliates, and their current and former employees, officers and directors, and the Judge assigned to this case.

107.     Plaintiffs reserve the right to modify, change, or expand the definitions of the proposed Class based upon discovery and further investigation.

108.     *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. There are hundreds of thousands of proposed Class members, evidenced by the large volume of trades in the Relevant Securities. The proposed Class is ascertainable by records in Defendants' possession.

109.     *Commonality*: Questions of law or fact common to the class include, without limitation:

>   a.  Whether Defendants combined or conspired to restrict the trading of the
>       Relevant Securities;
>
>   b.  Whether Defendants combined or conspired to change the market price of the
>       Relevant Securities;
>
>   c.  Whether Defendants' conduct caused the market price of the Relevant
>       Securities to change;
>
>   d.  Whether Plaintiffs and Class members were injured as a result of Defendants'
>       unlawful conduct; and
>
>   e.  Whether Plaintiffs and Class members are entitled to damages and other relief
>       as a result of Defendants' unlawful conduct.

20

110.    *Typicality*: The claims or defenses of Plaintiffs are typical of the claims or defenses of the proposed Class members. Plaintiffs traded the Relevant Securities and were unable to trade at a fair market price because of Defendants' unlawful conduct. Plaintiffs suffered economic damages in the form of out-of-pocket costs and loss of value in their investments. Proposed Class members were injured and suffered damages in substantially the same manner as Plaintiffs, proposed Class members have the same claims against Defendants relating to the same course of conduct, and the proposed Class members are entitled to relief under the same legal theories asserted by Plaintiffs.

111.    *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the proposed Class and have no interests antagonistic to those of the proposed Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions including, but not limited to, antitrust, breaches of warranties, breach of contract, and state consumer fraud statutes.

112.    *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as Defendants' alleged conspiracy, the effect of Defendants' unlawful conduct on the stock market, and Defendant's liability predominate over individual questions such as measurement of economic damages.

113.    *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all members of the proposed Class is impracticable and the amount at issue for each proposed Class member would not justify the cost of litigating individual claims. Should individual proposed Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast

to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

114.    *Manageability*: Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

115.    Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

116.     Defendant has acted, and refused to act, on grounds generally applicable to the proposed Class, thereby making appropriate final equitable relief with respect to the proposed Class as a whole.

117.    Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE SHERMAN ACT
### 15 U.S.C. § 1
### (on behalf of the proposed Class)

118.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

119.    On information and belief, Defendants knowingly entered into an illegal conspiracy to affect the market prices of the Relevant Securities.

120.    The conspiracy was intended to and did in fact suppress the market prices of the Relevant Securities.

121.    The Clearinghouse and Fund Defendants pressured the Brokerage Defendants to restrict trading of the Relevant Securities by retail investors.

122.    The conspiracy prevented retail investors from fairly participating in the stock market with respect to the Relevant Securities while Defendant were able to exert control and drive the prices of the Relevant Securities down.

123.    The conspiracy deceived retail investors into believing that they could fairly trade the Relevant Securities through the Brokerage Defendants until the Defendants restricted trading by retail investors for their own gain.

124.    The conspiracy enabled Defendants to exert control over the stock market with respect to the Relevant Securities and force the prices of the Relevant Securities to decrease.

125.    The conspiracy was intended to and did in fact enrich Defendants to the detriment of retail investors.

126.    Throughout the conspiracy, Defendants made misstatements about their involvement in the conspiracy, including how and why trading restrictions were being implemented, in order to deceive retail investors and profit to the detriment of retail investors.

127.    The conspiracy had a substantial effect on interstate commerce by affecting the market prices of numerous exchange-traded securities and involving Defendants and investors from across the United States.

128.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the proposed Class members have been injured and sustained damages.

129.    Plaintiffs and the Class further seek equitable and injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and other applicable law, to correct the anticompetitive effects caused by Defendants' unlawful conduct

## COUNT II
## CONSPIRACY TO RESTRAIN TRADE
## IN VIOLATION OF THE CALIFORNIA CARTWRIGHT ACT
### Cal. Bus. & Prof. Code § 16700 *et seq.*
### (on behalf of the proposed Class)

130.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

131.     On information and belief, Defendants knowingly entered into an illegal conspiracy to affect the market prices of the Relevant Securities.

132.     The conspiracy was intended to and did in fact suppress the market prices of the Relevant Securities.

133.     The Clearinghouse and Fund Defendants pressured the Brokerage Defendants to restrict trading on in the Relevant Securities by retail investors.

134.     The conspiracy prevented retail investors from fairly participating in the stock market with respect to the Relevant Securities while Defendant were able to exert control and drive the prices of the Relevant Securities down.

135.     The conspiracy deceived retail investors into believing that they could fairly trade the Relevant Securities through the Brokerage Defendants until the Defendants restricted trading by retail investors for their own gain.

136.     The conspiracy enabled Defendants to exert control over the stock market with respect to the Relevant Securities and force the prices of the Relevant Securities to decrease.

137.     The conspiracy was intended to and did in fact enrich Defendants to the detriment of retail investors.

138.     Throughout the conspiracy, Defendants made misstatements about their involvement in the conspiracy, including how and why trading restrictions were being implemented, in order to deceive retail investors and profit to the detriment of retail investors.

139. As a direct and proximate result of Defendant's conduct, Plaintiffs and the proposed Class members have been injured and sustained damages.

140. Plaintiffs and the Class seek treble damages and their cost of suit, including attorneys' fee, equitable and injunctive relief pursuant to California Business and Professions Code § 16750(a), and other applicable law, to correct the anticompetitive effects caused by Defendants' unlawful conduct.

**COUNT III**
**UNFAIR COMPETITION**
**Cal. Bus. & Prof. Code § 17200 *et seq.***
**(on behalf of the proposed Class)**

141. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

142. On information and belief, Defendants knowingly entered into an illegal conspiracy to affect the market prices of the Relevant Securities.

143. The conspiracy was intended to and did in fact suppress the market prices of the Relevant Securities.

144. The Clearinghouse and Fund Defendants pressured the Brokerage Defendants to restrict trading on in the Relevant Securities by retail investors.

145. The conspiracy prevented retail investors from fairly participating in the stock market with respect to the Relevant Securities while Defendant were able to exert control and drive the prices of the Relevant Securities down.

146. The conspiracy deceived retail investors into believing that they could fairly trade the Relevant Securities through the Brokerage Defendants until the Defendants restricted trading by retail investors for their own gain.

147.     The conspiracy enabled Defendants to exert control over the stock market with respect to the Relevant Securities and force the prices of the Relevant Securities to decrease.

148.     The conspiracy was intended to and did in fact enrich Defendants to the detriment of retail investors.

149.     Throughout the conspiracy, Defendants made misstatements about their involvement in the conspiracy, including how and why trading restrictions were being implemented, in order to deceive retail investors and profit to the detriment of retail investors.

150.     As alleged herein, Defendants engaged in unlawful conduct in violation of Cal. Bus. & Prof. Code § 17200 which prohibits any unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertisement.

151.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the proposed Class members have been injured and sustained damages.

<u>COUNT IV</u>
**DISSEMINATION OF UNTRUE AND MISLEADING PUBLIC STATEMENTS**
**Cal. Bus. & Prof. Code § 17500 *et seq.***
**(on behalf of the proposed Class)**

152.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

153.     On information and belief, Defendants knowingly entered into an illegal conspiracy to affect the market prices of the Relevant Securities.

154.     The conspiracy was intended to and did in fact suppress the market prices of the Relevant Securities.

155.     The Clearinghouse and Fund Defendants pressured the Brokerage Defendants to restrict trading on in the Relevant Securities by retail investors.

156.    The conspiracy prevented retail investors from fairly participating in the stock market with respect to the Relevant Securities while Defendant were able to exert control and drive the prices of the Relevant Securities down.

157.    The conspiracy deceived retail investors into believing that they could fairly trade the Relevant Securities through the Brokerage Defendants until the Defendants restricted trading by retail investors for their own gain.

158.    The conspiracy enabled Defendants to exert control over the stock market with respect to the Relevant Securities and force the prices of the Relevant Securities to decrease.

159.    The conspiracy was intended to and did in fact enrich Defendants to the detriment of retail investors.

160.    Throughout the conspiracy, Defendants made misstatements about their involvement in the conspiracy, including how and why trading restrictions were being implemented, in order to deceive retail investors and profit to the detriment of retail investors.

161.    As alleged herein, Defendants engaged in unlawful conduct in violation of Cal. Bus. & Prof. Code § 17500 which prohibits making or disseminating, or causing to be made or disseminated, before the public, untrue or misleading statements in connection with the sale of goods or services, that Defendants knew or should have known were untrue or misleading, including but not limited to statements concerning the reliability, fairness, and accuracy of the value of the Relevant Securities, and continue to do so with the intent to induce the Retail Investors to sell their shares of the Relevant Securities at artificially suppressed prices.

162.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the proposed Class members have been injured and sustained damages.

## <u>COUNT V</u>
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (against Brokerage Defendants)

163.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

164.     On information and belief, Defendants knowingly entered into an illegal conspiracy to affect the market prices of the Relevant Securities.

165.     The conspiracy was intended to and did in fact suppress the market prices of the Relevant Securities.

166.     The Clearinghouse and Fund Defendants pressured the Brokerage Defendants to restrict trading on in the Relevant Securities by retail investors.

167.     The conspiracy prevented retail investors from fairly participating in the stock market with respect to the Relevant Securities while Defendant were able to exert control and drive the prices of the Relevant Securities down.

168.     The conspiracy deceived retail investors into believing that they could fairly trade the Relevant Securities through the Brokerage Defendants until the Defendants restricted trading by retail investors for their own gain.

169.     The conspiracy enabled Defendants to exert control over the stock market with respect to the Relevant Securities and force the prices of the Relevant Securities to decrease.

170.     The conspiracy was intended to and did in fact enrich Defendants to the detriment of retail investors.

171.     Throughout the conspiracy, Defendants made misstatements about their involvement in the conspiracy, including how and why trading restrictions were being implemented, in order to deceive retail investors and profit to the detriment of retail investors.

172. Plaintiffs and Class members entered into agreements with Brokerage Defendants to permit the buying and selling of securities, including the Relevant Securities.

173. Plaintiffs and Class members complied with their obligations under the brokerage agreements.

174. The Brokerage Defendants did not disclose to Plaintiffs and Class members that they could be denied the ability to trade in the Relevant Securities in order to effectuate an unlawful conspiracy to enrich the Defendants to the detriment of retail investors.

175. The Brokerage Defendants, by restricting trading in the Relevant Securities without notice in order to effectuate an unlawful conspiracy and take advantage of retail investors, breached the covenant of good faith and fair dealing implied in the brokerage agreements.

176. As a direct and proximate result of Defendant's conduct, Plaintiffs and the proposed Class members have been injured and sustained damages.

## COUNT VI
## NEGLIGENCE
### (against Brokerage Defendants)

177. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

178. On information and belief, Defendants knowingly entered into an illegal conspiracy to affect the market prices of the Relevant Securities.

179. The conspiracy was intended to and did in fact suppress the market prices of the Relevant Securities.

180. The Clearinghouse and Fund Defendants pressured the Brokerage Defendants to restrict trading on in the Relevant Securities by retail investors.

181. The conspiracy prevented retail investors from fairly participating in the stock market with respect to the Relevant Securities while Defendant were able to exert control and drive the prices of the Relevant Securities down.

182. The conspiracy deceived retail investors into believing that they could fairly trade the Relevant Securities through the Brokerage Defendants until the Defendants restricted trading by retail investors for their own gain.

183. The conspiracy enabled Defendants to exert control over the stock market with respect to the Relevant Securities and force the prices of the Relevant Securities to decrease.

184. The conspiracy was intended to and did in fact enrich Defendants to the detriment of retail investors.

185. Throughout the conspiracy, Defendants made misstatements about their involvement in the conspiracy, including how and why trading restrictions were being implemented, in order to deceive retail investors and profit to the detriment of retail investors.

186. Plaintiffs and Class members entered into agreements with Brokerage Defendants to permit the buying and selling of securities, including the Relevant Securities.

187. Plaintiffs and Class members complied with their obligations under the brokerage agreements.

188. The Brokerage Defendants did not disclose to Plaintiffs and Class members that they could be denied the ability to trade in the Relevant Securities in order to effectuate an unlawful conspiracy to enrich the Defendants to the detriment of retail investors.

189. The Brokerage Defendants had a duty to exercise reasonable care in safeguarding Plaintiffs' and Class members' investments and in providing a platform to execute trades that is fair and lawful.

190.     The Brokerage Defendants, by restricting trading in the Relevant Securities in order to effectuate an unlawful conspiracy and take advantage of retail investors, breached their duty.

191.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the proposed Class members have been injured and sustained damages.

**COUNT VII**
**NEGLIGENCE PER SE**
**(against Brokerage Defendants)**

192.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

193.     On information and belief, Defendants knowingly entered into an illegal conspiracy to affect the market prices of the Relevant Securities.

194.     The conspiracy was intended to and did in fact suppress the market prices of the Relevant Securities.

195.     The Clearinghouse and Fund Defendants pressured the Brokerage Defendants to restrict trading on in the Relevant Securities by retail investors.

196.     The conspiracy prevented retail investors from fairly participating in the stock market with respect to the Relevant Securities while Defendant were able to exert control and drive the prices of the Relevant Securities down.

197.     The conspiracy deceived retail investors into believing that they could fairly trade the Relevant Securities through the Brokerage Defendants until the Defendants restricted trading by retail investors for their own gain.

198.     The conspiracy enabled Defendants to exert control over the stock market with respect to the Relevant Securities and force the prices of the Relevant Securities to decrease.

199.     The conspiracy was intended to and did in fact enrich Defendants to the detriment of retail investors.

200.     Throughout the conspiracy, Defendants made misstatements about their involvement in the conspiracy, including how and why trading restrictions were being implemented, in order to deceive retail investors and profit to the detriment of retail investors.

201.     Pursuant to the statutes alleged herein, the Brokerage Defendants had a statutory duty to exercise reasonable care in safeguarding Plaintiffs' and Class members' investments and in providing a platform to execute trades that is fair and lawful.

202.     As alleged herein, the Brokerage Defendants, by restricting trading in the Relevant Securities in order to effectuate an unlawful conspiracy and take advantage of retail investors, violated these duties.

203.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the proposed Class members have been injured and sustained damages.

## COUNT VIII
## BREACH OF FIDUCIARY DUTY
### (against Brokerage Defendants)

204.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

205.     On information and belief, Defendants knowingly entered into an illegal conspiracy to affect the market prices of the Relevant Securities.

206.     The conspiracy was intended to and did in fact suppress the market prices of the Relevant Securities.

207.     The Clearinghouse and Fund Defendants pressured the Brokerage Defendants to restrict trading on in the Relevant Securities by retail investors.

208.     The conspiracy prevented retail investors from fairly participating in the stock market with respect to the Relevant Securities while Defendant were able to exert control and drive the prices of the Relevant Securities down.

32

209. The conspiracy deceived retail investors into believing that they could fairly trade the Relevant Securities through the Brokerage Defendants until the Defendants restricted trading by retail investors for their own gain.

210. The conspiracy enabled Defendants to exert control over the stock market with respect to the Relevant Securities and force the prices of the Relevant Securities to decrease.

211. The conspiracy was intended to and did in fact enrich Defendants to the detriment of retail investors.

212. Throughout the conspiracy, Defendants made misstatements about their involvement in the conspiracy, including how and why trading restrictions were being implemented, in order to deceive retail investors and profit to the detriment of retail investors.

213. Plaintiffs and Class members entered into agreements with Brokerage Defendants to permit the buying and selling of securities, including the Relevant Securities.

214. Plaintiffs and Class members complied with their obligations under the brokerage agreements.

215. The Brokerage Defendants did not disclose to Plaintiffs and Class members that they could be denied the ability to trade in the Relevant Securities in order to effectuate an unlawful conspiracy to enrich the Defendants to the detriment of retail investors.

216. The Brokerage Defendants were fiduciaries of Plaintiffs and Class members and therefore had a duty to exercise good faith and integrity in safeguarding Plaintiffs' and Class members' investments and in providing a platform to execute trades that is fair and lawful.

217. The Brokerage Defendants, by restricting trading in the Relevant Securities in order to effectuate an unlawful conspiracy and take advantage of retail investors, breached their duty.

218.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the proposed Class members have been injured and sustained damages.

## COUNT IX
## CONSTRUCTIVE FRAUD
### (against Brokerage Defendants)

219.     Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

220.     On information and belief, Defendants knowingly entered into an illegal conspiracy to affect the market prices of the Relevant Securities.

221.     The conspiracy was intended to and did in fact suppress the market prices of the Relevant Securities.

222.     The Clearinghouse and Fund Defendants pressured the Brokerage Defendants to restrict trading on in the Relevant Securities by retail investors.

223.     The conspiracy prevented retail investors from fairly participating in the stock market with respect to the Relevant Securities while Defendant were able to exert control and drive the prices of the Relevant Securities down.

224.     The conspiracy deceived retail investors into believing that they could fairly trade the Relevant Securities through the Brokerage Defendants until the Defendants restricted trading by retail investors for their own gain.

225.     The conspiracy enabled Defendants to exert control over the stock market with respect to the Relevant Securities and force the prices of the Relevant Securities to decrease.

226.     The conspiracy was intended to and did in fact enrich Defendants to the detriment of retail investors.

227.    Throughout the conspiracy, Defendants made misstatements about their involvement in the conspiracy, including how and why trading restrictions were being implemented, in order to deceive retail investors and profit to the detriment of retail investors.

228.    Plaintiffs and Class members entered into agreements with Brokerage Defendants to permit the buying and selling of securities, including the Relevant Securities.

229.    Plaintiffs and Class members complied with their obligations under the brokerage agreements.

230.    The Brokerage Defendants did not disclose to Plaintiffs and Class members that they could be denied the ability to trade in the Relevant Securities in order to effectuate an unlawful conspiracy to enrich the Defendants to the detriment of retail investors.

231.    The Brokerage Defendants were fiduciaries of Plaintiffs and Class members and therefore had a duty to exercise good faith and integrity in safeguarding Plaintiffs' and Class members' investments and in providing a platform to execute trades that is fair and lawful.

232.    The Brokerage Defendants' duties of care, good faith, and integrity were material to Plaintiffs and Class members decisions to be customers of the Brokerage Defendants and entrust them with their investments.

233.    Plaintiffs and Class members reasonably relied on the Brokerage Defendants exercising their duties.

234.    The Brokerage Defendants, by restricting trading in the Relevant Securities in order to effectuate an unlawful conspiracy and take advantage of retail investors, breached their duties and defrauded Plaintiffs and Class members.

235.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the proposed Class members have been injured and sustained damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays

for a judgment against Defendant as follows:

a. For an order certifying the proposed Class, appointing Plaintiffs as Representatives of the proposed Class, and appointing the law firms representing Plaintiffs as counsel for the Class;

b. For compensatory damages, restitution, and/or refund of all funds acquired by Defendant from Plaintiffs and the proposed Class members as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices described herein, including actual, statutory, punitive, and/or trebled damages to the extent permitted by law in an amount to be proven at trial;

c. Payment of costs and expenses of suit herein incurred;

d. Both pre-and post-judgment interest on any amounts awarded;

e. Payment of reasonable attorneys' fees and expert fees;

f. Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury.

Dated: April 15, 2021                                Respectfully submitted,

By: */s/ Patrick S. Montoya*
Patrick S. Montoya, Esq.
Florida Bar Number: 524441
COLSON HICKS EIDSON
***Attorneys for Plaintiffs***
255 Alhambra Circle, PH
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Email: patrick@colson.com
eservice@colson.com

Daniel C. Levin, Esq.
Austin B. Cohen, Esq.
Keith J. Verrier, Esq.
Nicholas J. Elia, Esq.
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
dlevin@lfsblaw.com
acohen@lfsblaw.com
kverrier@lfsblaw.com
nelia@lfsblaw.com
*Pro hac vice applications to be submitted*

Aaron Rihn, Esq.
**ROBERT PEIRCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229
*Pro hac vice applications to be submitted*

*Attorneys for Plaintiff*

JS 44 (Rev. 10/20) FLSD Revised 02/12/2021

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

### I. (a) PLAINTIFFS

Stephen D'agostino & Janelle Burch

### DEFENDANTS

See attached list

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Patrick S. Montoya, Esq.; Colson Hicks Edison, 255 Alhambra Cir Penthouse, Coral Gables, FL 33134

Attorneys *(If Known)*

**(d)** Check County Where Action Arose: ☑ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only) and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excl. Veterans) | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 485 Telephone Consumer Protection Act (TCPA) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed *(See VI below)*
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation Transfer
☐ 7 Appeal to District Judge from Magistrate Judgment
☐ 8 Multidistrict Litigation – Direct File
☐ 9 Remanded from Appellate Court

### VI. RELATED/ RE-FILED CASE(S)

*(See instructions):* a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☑ YES ☐ NO

JUDGE: Altonaga    DOCKET NUMBER: 0:21-cv-60220-CMA

### VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
15 USC Sec. 15

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ > 75,000    CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

DATE April 15, 2021    SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY: RECEIPT # _____ AMOUNT _____ IFP _____ JUDGE _____ MAG JUDGE _____

ALLY FINANCIAL INC.; ALPACA SECURITIES LLC; CASH APP INVESTING LLC; SQUARE INC.; DOUGH LLC; MORGAN STANLEY SMITH BARNEY LLC; ETRADE SECURITIES LLC; ETRADE FINANCIAL CORPORATION; ETRADE FINANCIAL HOLDINGS, LLC; ETORO USA SECURITIES, INC.; FREETRADE, LTD.; INTERACTIVE BROKERS LLC; M1 FINANCE, LLC; OPEN TO THE PUBLIC INVESTING, INC.; ROBINHOOD FINANCIAL, LLC; ROBINHOOD MARKETS, INC.; ROBINHOOD SECURITIES, LLC; IG GROUP HOLDINGS PLC; TASTYWORKS, INC.; TD AMERITRADE, INC.; THE CHARLES SCHWAB CORPORATION; CHARLES SCHWAB & CO. INC.; FF TRADE REPUBLIC GROWTH, LLC; TRADING 212 LTD.; TRADING 212 UK LTD.; WEBULL FINANCIAL LLC; FUMI HOLDINGS, INC.; STASH FINANCIAL, INC.; CITADEL ENTERPRISE AMERICAS, LLC; CITADEL SECURITIES LLC; MELVIN CAPITAL MANAGEMENT LP; SEQUOIA CAPITAL OPERATIONS LLC; APEX CLEARING CORPORATION; and THE DEPOSITORY TRUST & CLEARING CORPORATION,

EGT

# U.S. District Court
## Southern District of Florida (Miami)
## CIVIL DOCKET FOR CASE #: 1:21-cv-21458-DPG


D'agostino et al v. Ally Financial Inc. et al
Assigned to: Judge Darrin P. Gayles
Cause: 15:0015 Antitrust Litigation

Date Filed: 04/15/2021
Jury Demand: Plaintiff
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

**Plaintiff**

**Stephen D'agostino**
*individually and on behalf of all others
similarly situated*

represented by **Austin B. Cohen**
Levin Sedran & Berman LLP
510 Walnut Street - Suite 500
Philadelphia, PA 19106
(215) 592-1500
Email: ACohen@lfsblaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel C. Levin**
Levin, Sedran & Berman, LLP
510 Walnut Street
Suite 500
Philadelphia, PA 19106-3697
215-592-1500
Email: dlevin@lfsblaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Shanan Montoya**
Colson Hicks Eidson
255 Alhambra Circle
Penthouse
Coral Gables, FL 33134-2351
305-476-7400
Fax: 476-7444
Email: patrick@colson.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Janelle Burch**
*individually and on behalf of all others
similarly situated*

represented by **Austin B. Cohen**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel C. Levin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Shanan Montoya**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

Ally Financial Inc.

**Defendant**

Alpaca Securities LLC

**Defendant**

Cash App Investing LLC

**Defendant**

Square Inc.

**Defendant**

Dough LLC

**Defendant**

Morgan Stanley Smith Barney LLC

**Defendant**

ETrade Securities LLC

**Defendant**

ETrade Financial Corporation

**Defendant**

ETrade Financial Holdings , LLC

**Defendant**

eToro USA Securities, Inc.

**Defendant**

Freetrade Ltd.

**Defendant**

Interactive Brokers LLC

**Defendant**

**M1 Finance LLC**

**Defendant**

**Open To The Public Investing, Inc.**

**Defendant**

**Robinhood Financial, LLC**                represented by    **Maria Alina Castellanos Alvarado**
                                                            Hunton Andrews Kurth LLP
                                                            333 S.E. 2 Avenue
                                                            Suite 2400
                                                            Miami, FL 33131
                                                            305-810-2523
                                                            Fax: 305-810-2460
                                                            Email: mcastellanos@hunton.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Robinhood Markets, Inc.**                 represented by    **Maria Alina Castellanos Alvarado**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Robinhood Securities, LLC**               represented by    **Maria Alina Castellanos Alvarado**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**IG Group Holdings PLC**

**Defendant**

**Tastyworks, Inc.**

**Defendant**

**TD Ameritrade, Inc.**

**Defendant**

**The Charles Schwab Corporation**

**Defendant**

**Charles Schwab & Co. Inc.**

**Defendant**

**FF Trade Republic Growth, LLC**

**Defendant**

**Trading 212 Ltd.**

**Defendant**

**Trading 212 UK Ltd.**

**Defendant**

**WeBull Financial LLC**

**Defendant**

**Fumi Holdings, Inc.**

**Defendant**

**Stash Financial, Inc.**

**Defendant**

**Citadel Enterprise Americas, LLC**

**Defendant**

**Citadel Securities LLC**

**Defendant**

**Melvin Capital Management LP**

**Defendant**

**Sequoia Capital Operations LLC**

**Defendant**

**Apex Clearing Corporation**

**Defendant**

**The Depository Trust & Clearing Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/15/2021 | 1 | COMPLAINT against All Defendants. Filing fees $ 402.00 receipt number AFLSDC-14609842, filed by Janelle Burch, Stephen D'agostino. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet)(Montoya, Patrick) (Entered: 04/15/2021) |
| 04/15/2021 | 2 | Clerks Notice of Judge Assignment to Judge Darrin P. Gayles.<br><br>Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Edwin G. Torres is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent.<br><br>Pro se (NON-PRISONER) litigants may receive Notices of Electronic Filings (NEFS) via email after filing a Consent by Pro Se Litigant (NON-PRISONER) to Receive Notices of Electronic Filing. The consent form is available under the forms section of our website. (pcs) (Entered: 04/15/2021) |

| 04/15/2021 | 3 | Clerks Notice to Filer re: Electronic Case. Parties Not Added. The Filer failed to add all parties associated with the case. Filer is instructed to add the additional parties by filing a Notice of Entry of Parties. It is not necessary to re-file this document. (pcs) (Entered: 04/15/2021) |
| 04/18/2021 | 4 | Notice of Pending, Refiled, Related or Similar Actions by Robinhood Financial, LLC, Robinhood Markets, Inc., Robinhood Securities, LLC. Attorney Maria Alina Castellanos Alvarado added to party Robinhood Financial, LLC(pty:dft), Attorney Maria Alina Castellanos Alvarado added to party Robinhood Markets, Inc.(pty:dft), Attorney Maria Alina Castellanos Alvarado added to party Robinhood Securities, LLC(pty:dft). (Castellanos Alvarado, Maria) (Entered: 04/18/2021) |
| 04/21/2021 | 5 | NOTICE OF COURT PRACTICE. Unless otherwise specified by the Court, every motion shall be double-spaced in Times New Roman 12-point typeface. **Multiple Plaintiffs or Defendants shall file joint motions with co-parties unless there are clear conflicts of position.** If conflicts of position exist, parties shall explain the conflicts in their separate motions. Failure to comply with **ANY** of these procedures may result in the imposition of appropriate sanctions, including but not limited to, the striking of the motion or dismissal of this action. Signed by Judge Darrin P. Gayles (mcy) (Entered: 04/21/2021) |
| 05/11/2021 | 6 | Notice of Entry of Parties Listed (Montoya, Patrick) (Entered: 05/11/2021) |
| 05/12/2021 | 7 | Clerks Notice to Filer re 6 Notice of Entry of Parties Listed into CM/ECF. **Parties/Mediator Not Added**; ERROR - The Filer failed to add all parties from the complaint/petition/removal, etc. or the mediator. Filer is instructed to file a Notice of Entry of Parties Listed into CM/ECF and add the additional parties/mediator. (pcs) (Entered: 05/12/2021) |
| 05/12/2021 | 8 | Notice of Entry of Parties Listed NOTE: New Filer(s) will appear twice, since they are also a new party in the case. New Filer(s)/Party(s): The Depository Trust & Clearing Corporation. (Montoya, Patrick) (Entered: 05/12/2021) |
| 05/13/2021 | 9 | Plaintiff's MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Austin B. Cohen. Pay.gov Agency Tracking ID FLSDC-14683874. Filing Fee $ 200.00 by Janelle Burch, Stephen D'agostino. Responses due by 5/27/2021 (Attachments: # 1 Certification)(Montoya, Patrick) (Entered: 05/13/2021) |
| 05/13/2021 | 10 | Plaintiff's MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Daniel C. Levin. Filing Fee $ 200.00 Receipt # AFLSDC-14684170 by Janelle Burch, Stephen D'agostino. Responses due by 5/27/2021 (Attachments: # 1 Certification Certification and Proposed Order) (Montoya, Patrick) (Entered: 05/13/2021) |
| 05/17/2021 | 11 | Notice of Pending, Refiled, Related or Similar Actions by Janelle Burch, Stephen D'agostino (Montoya, Patrick) (Entered: 05/17/2021) |
| 05/20/2021 | 12 | PAPERLESS ORDER denying without prejudice 9 10 Motions to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filings for failure to comply with the Local Rules. Signed by Judge Darrin P. Gayles (mcy) (Entered: 05/20/2021) |

| | | |
|---|---|---|
| 05/24/2021 | 13 | Amended MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Daniel C. Levin. Filing Fee $ 200.00 Amended/Corrected Motion to Appear Pro Hac Vice Filed - Filing Fees Previously Paid. See 10 Motion to Appear Pro Hac Vice, by Janelle Burch, Stephen D'agostino. Responses due by 6/7/2021 (Attachments: # 1 Certification Certification and Proposed Order)(Montoya, Patrick) (Entered: 05/24/2021) |
| 05/24/2021 | | Attorney Daniel C. Levin representing D'agostino, Stephen (Plaintiff) and Burch, Janelle (Plaintiff) Activated. (pt) (Entered: 05/24/2021) |
| 05/25/2021 | 14 | Amended MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Austin B. Cohen. Filing Fee $ 200.00 Amended/Corrected Motion to Appear Pro Hac Vice Filed - Filing Fees Previously Paid. See 9 Motion to Appear Pro Hac Vice, by Janelle Burch, Stephen D'agostino. Responses due by 6/8/2021 (Attachments: # 1 Certification Certification and Proposed Order)(Montoya, Patrick) (Entered: 05/25/2021) |
| 05/25/2021 | | Attorney Austin B. Cohen representing D'agostino, Stephen (Plaintiff) and Burch, Janelle (Plaintiff) Activated. (pt) (Entered: 05/25/2021) |
| 06/01/2021 | 15 | PAPERLESS ORDER denying without prejudice 13 14 Motions to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filings for failure to comply with the Local Rules. Signed by Judge Darrin P. Gayles (mcy) (Entered: 06/01/2021) |
| 06/02/2021 | 16 | Amended MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Austin B. Cohen. *(Second Amended Motion)* Filing Fee $ 200.00 Amended/Corrected Motion to Appear Pro Hac Vice Filed - Filing Fees Previously Paid. See 9 Motion to Appear Pro Hac Vice, by Janelle Burch, Stephen D'agostino. Responses due by 6/16/2021 (Attachments: # 1 Certification Certification and Proposed Order)(Montoya, Patrick) (Entered: 06/02/2021) |
| 06/02/2021 | 17 | Amended MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Daniel C. Levin. *(Second Amended Motion)* Filing Fee $ 200.00 Amended/Corrected Motion to Appear Pro Hac Vice Filed - Filing Fees Previously Paid. See 10 Motion to Appear Pro Hac Vice, by Janelle Burch, Stephen D'agostino. Responses due by 6/16/2021 (Attachments: # 1 Certification Certification and Proposed Order)(Montoya, Patrick) (Entered: 06/02/2021) |
| 06/03/2021 | | Attorney Austin B. Cohen representing D'agostino, Stephen (Plaintiff) and Burch, Janelle (Plaintiff); Attorney Daniel C. Levin representing D'agostino, Stephen (Plaintiff) and Burch, Janelle (Plaintiff); Activated. (pt) (Entered: 06/03/2021) |
| 06/22/2021 | 18 | PAPERLESS ORDER granting 16 17 Second Amended Motions to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filings. Daniel C. Levin and Austin B. Cohen may appear and participate in this action on behalf of Plaintiffs. The Clerk shall provide electronic notification of all electronic filings to Daniel C. Levin at dlevin@lfsblaw.com and Austin B. Cohen at ACohen@lfsblaw.com. Signed by Judge Darrin P. Gayles (mcy) (Entered: 06/22/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/26/2021 17:19:50 | | | |
| **PACER Login:** | lfsblaw0044 | **Client Code:** | robinhood |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-21458-DPG |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |